JOSEPH A. BODNER v. UNITED SERVICES AUTO-
MOBILE ASSOCIATION
(14373)

UNITED SERVICES AUTOMOBILE ASSOCIATION v.
JOSEPH A. BODNER
(14374)

PETERS, C. J., CALLAHAN, COVELLO, BORDEN and BERDON, Js.

---

Argued April 2—decision released June 16, 1992

*Enrico Vaccaro,* for the appellant-appellee in the first case and appellee in the second case (Joseph A. Bodner).

*Jack D. Miller,* for the appellee-appellant in the first case and appellant in the second case (United Services Automobile Association).

*Constance L. Epstein* and *Jack G. Steigelfest* filed a brief for the National Association of Independent Insurers as amicus curiae.

PETERS, C. J. The principal issue in this appeal is whether common law punitive damages are recoverable under the uninsured motorist provision of an automobile insurance policy. Joseph A. Bodner (Bodner) was injured when the car that he was driving was struck by an uninsured motor vehicle. In order to recover damages from his insurer, United Services Automobile Association (USAA), he made a written demand for arbitration pursuant to his insurance policy.

After the arbitration panel made a written award, each of the parties made a separate application for a judicial modification thereof. Upon consolidation of the applications in the trial court, that court denied in its entirety Bodner's application to correct and modify the award and granted USAA's application in part. Both parties then appealed to the Appellate Court, and we transferred both cases to this court pursuant to Practice Book § 4023. We affirm in part and reverse in part.

The following facts are undisputed. On January 25, 1985, the car that Bodner was driving was stopped at a red light when it was struck from behind by an uninsured motor vehicle owned and operated by Kenneth Church. At that time, Bodner was covered by a USAA automobile insurance policy that included coverage for damages caused by an uninsured motorist. Bodner suffered injuries as a result of the collision, and made a claim against USAA pursuant to the uninsured motorist provisions of his insurance policy. When they could not agree on the amount of damages, Bodner demanded arbitration, as provided in the policy.[1]

At the arbitration proceeding, Bodner sought both compensatory damages and common law punitive damages for Church's reckless misconduct. The arbitration panel, with one of the three members dissenting, concluded that Bodner was entitled to an award of $651,438.99, calculated as follows:

| | |
|---|---|
| Past medical treatment | $ 10,249.00 |
| Future medical treatment | 20,000.00 |
| Pain and suffering, permanent injury and disabilities | 225,000.00 |

---

[1] The insurance policy provided in relevant part: "If we and a covered person do not agree: 1. Whether that person is legally entitled to recover damages under this Part; or 2. As to the amount of damages; either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. . . . A decision agreed to by two of the arbitrators will be binding  . . . ."

| | |
|---|---|
| Past lost earnings | 155,475.99 |
| Future lost earnings | 240,714.00 |
| TOTAL: | $651,438.99 |

Because it had been stipulated that $6832.67 had already been advanced by USAA, the arbitrators' net award was $644,606.32. The panel found that Church's misconduct would have supported an award of punitive damages in a liability case against him, but held that such damages were barred, as a matter of law, by General Statutes (Rev. to 1987) § 38-175c (now § 38a-336)[2] and by the insurance policy.

---

[2] General Statutes (Rev. to 1987) § 38-175c provided: "UNINSURED MOTORIST COVERAGE. (a) (1) Every [automobile liability insurance] policy shall provide insurance, herein called uninsured motorist coverage, in accordance with such regulations [as the insurance commissioner adopts], with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom, provided each insurer licensed to write automobile liability insurance in this state shall provide uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but such insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of such policy issued to such named insured. No insurer shall be required to provide uninsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) to any insured occupying an uninsured or underinsured motor vehicle or motorcycle that is owned by such insured. Every such policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. With respect to any claim submitted to arbitration on or after October 1, 1983, the arbitration proceeding shall be conducted by a single arbitrator if the amount in demand is forty thousand dollars or less or by a panel of three arbitrators if the amount in demand is more than forty thousand dollars.

"(2) Notwithstanding any provision of this section to the contrary, every such policy issued or renewed on and after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed

Bodner brought an application in Superior Court to confirm the award of compensatory damages, to correct or modify so much of the award as denied him punitive damages, and for interest on the award pursuant to General Statutes § 37-3a. USAA brought an application to vacate the award and to correct or modify with respect to so much of the award as represented future medical expenses and past and future lost earnings.

After consolidation of the applications, the trial court rendered a judgment denying Bodner's application to correct or modify the award to add punitive damages, but awarded him prejudgment interest from February 19, 1991, the date of the arbitrators' decision. The court denied USAA's application insofar as it sought to vacate the award in its entirety and insofar as it sought to vacate that part of the award representing damages for past and future lost earnings. The court, however, granted USAA's application to delete from the award the $20,000 awarded for future medical

by law unless the insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by the insured.

"(b) (1) An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage.

"(2) For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subdivision (1) of this section."

treatment. The court accordingly rendered judgment for Bodner in the net amount of $624,606.32 plus interest. Both parties then appealed to the Appellate Court. We transferred both cases to ourselves pursuant to Practice Book § 4023. We reverse the trial court's decision to delete the $20,000 that was awarded for future medical treatment, and affirm the remainder of its judgment.

## I

Bodner maintains, on appeal, that the trial court: (1) improperly deleted $20,000 for future medical treatment from his arbitration award and (2) improperly refused to add a sum for punitive damages to his arbitration award. We agree with the first of these claims, but not with the second.

## A

The trial court undertook a de novo review of the propriety of the arbitration award for future medical treatment. Since the propriety of that portion of the award involved a question of law, the court concluded that a de novo review was required by § 38-175c (a) (1), as interpreted by *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 530 A.2d 171 (1987). We disagree with the court's interpretation of *DelGreco.*

In *DelGreco,* we held that "where judicial review of compulsory arbitration proceedings required by § 38-175c (a) (1) is undertaken under General Statutes § 52-418, the reviewing court must conduct a de novo review of the interpretation and application of the law by the arbitrators." Id., 191.[3] Our holding rested on

---

[3] General Statutes § 52-418 provides: "VACATING AWARD. (a) Upon the application of any party to an arbitration, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when the court is not in session, any judge thereof, shall make an order vacating the award if it finds any of the following defects: (1) If the award has been

the difference between voluntary arbitration and compulsory arbitration. "[V]oluntary arbitration and compulsory arbitration are fundamentally different if only because one may, under our system, consent to almost any restriction upon or deprivation of right, but similar restrictions or deprivations, if compelled by government, must accord with procedural and substantive due process." (Internal quotation marks omitted.) Id., 187. To insulate statutorily mandated arbitration awards from judicial review for errors of law "creates the anomaly that, without the consent of the parties, arbitrators are empowered to disregard the law in deciding issues affecting substantial rights." Id., 188.

The case is different where "the parties voluntarily bargained for the decision of the arbitrator and, as such, the parties are presumed to have assumed the risks of and waived objections to that decision." Id., 186–87. " 'We have recognized that when arbitration is consensual, rather than statutorily imposed, judicial review is limited in scope. . . . If the parties mutually agree to submit their dispute to arbitration, the resulting award is not reviewable for errors of law or fact. . . . Judicial review of unrestricted submissions is limited to a comparison between the submission and the award

procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"(b) If an award is vacated and the time within which the award is required to be rendered has not expired, the court or judge may direct a rehearing by the arbitrators.

"(c) Any party filing an application pursuant to subsection (a) of this section concerning an arbitration award issued by the state board of mediation and arbitration shall notify said board and the attorney general, in writing, of such filing within five days of the date of filing."

to see whether, in accordance with the powers conferred upon the arbitrators, their award conforms to the submission.' (Citations omitted.) *New Haven* v. *AFSCME, Council 15, Local 530,* 208 Conn. 411, 415–16, 544 A.2d 186 (1988)." *Hartford* v. *Board of Mediation & Arbitration,* 211 Conn. 7, 14, 557 A.2d 1236 (1989).

In this case, the trial court assumed that the arbitration proceedings had been compulsory with respect to every issue before the arbitrators. The record does not support that conclusion. *DelGreco* relied upon a provision of § 38-175c that states: "Every [automobile liability insurance policy] . . . which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding." This provision, we have held, makes arbitration of insurance *coverage* issues compulsory. *Wilson* v. *Security Ins. Group,* 199 Conn. 618, 622–24, 509 A.2d 467 (1986). The statute does not say, however, and we have never held, that any other issues arising under an uninsured motorist policy are required to be arbitrated. In this case, coverage of Bodner's personal injuries was not disputed, and the only question involving those injuries that was before the arbitrators was the amount of damages. In that regard, the arbitrators derived their authority not from the statute, but from the contract between the parties.[4] Arbitration of this issue was, therefore, voluntary, and judicial review

---

[4] At oral argument, USAA repeatedly contended that the arbitration proceeding should be deemed compulsory because it was held pursuant to an order of the Superior Court enforcing the contract's arbitration clause. This claim reflects a fundamental misunderstanding of the distinction between compulsory and voluntary arbitration. A contractual promise to arbitrate is a duty voluntarily undertaken, even if the contracting party later wishes to shirk that duty. "It is clear that a party cannot object to an award which accomplishes precisely what the arbitrators were authorized to do merely because that party dislikes the results." *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 187, 530 A.2d 171 (1987).

of the arbitrators' decision is limited to determining whether the award conforms to the submission. Because § 38-175c does not require arbitration of non-coverage issues, the arbitrators' resolution of those issues is not subject to de novo review. See *New Hampshire Ins. Co.* v. *Estate of Parkin,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 701480 (December 13, 1990).

USAA contends, however, that even if the arbitration proceeding was, in principle, contractual and voluntary, the specific terms of the arbitral referral in this case made the arbitration restricted rather than unrestricted, so that the normal deference to the award of the arbitrators does not apply. USAA reminds us of past decisions in which our finding that arbitration proceedings were unrestricted placed significant weight on the parties' failure to submit any specific questions to the arbitrator. See *Carroll* v. *Aetna Casualty & Surety Co.,* 189 Conn. 16, 20, 453 A.2d 1158 (1983); *Malecki* v. *Burnham,* 181 Conn. 211, 213, 435 A.2d 13 (1980); *Ramos Iron Works, Inc.* v. *Franklin Construction Co.,* 174 Conn. 583, 588, 392 A.2d 461 (1978). Where specific questions have been submitted to the arbitrators, we have held that the portion of the arbitrators' award that was entirely outside the submission was void. See *Local 63, Textile Workers Union* v. *Cheney Bros.,* 141 Conn. 606, 616, 109 A.2d 240 (1954), cert. denied, 348 U.S. 959, 75 S. Ct. 449, 99 L. Ed. 748 (1955). In the present case, USAA maintains that "[a] review of the record and of the award by the arbitrators makes it very clear that issues concerning earnings loss and the award for future medical treatment were specifically raised at and during the arbitration hearing."

USAA's argument misapprehends what it means to submit specific questions to the arbitrators. The reason why "the submission should set forth the questions to be resolved in such a manner as to show clearly what

disputes are to be arbitrated" is "because the source of the arbitrator's authority is found in the agreement of submission." *Local 63, Textile Workers Union* v. *Cheney Bros.*, supra, 613. "[A]n agreement for the submission of an issue to arbitration constitutes the charter of the entire arbitration proceedings and defines and limits the issues to be decided by the arbitration . . . ." *Board of Trustees* v. *Federation of Technical College Teachers*, 179 Conn. 184, 193, 425 A.2d 1247 (1979); see also *Frager* v. *Pennsylvania General Ins. Co.*, 155 Conn. 270, 276–77, 231 A.2d 531 (1967). Here USAA points to nothing in the arbitration agreement or the submission that restricts the arbitrators' powers in any relevant way, but instead invites us to search the record for specific issues and then to adjudicate whether the arbitrators decided those issues in accordance with the law. Such a procedure would destroy the finality of the arbitrators' decision and undercut the legislature's policy of encouraging the final resolution of disputes through arbitration. "In the case at bar, it was open to the parties to make an unrestricted or a restricted submission. 'Arbitrators . . . are not bound to follow strict rules of law, unless it be made a condition of the submission. . . .' *Liggett* v. *Torrington Building Co.*, 114 Conn. 425, 432, 158 A. 917 [1932]." *Chase Brass & Copper Co.* v. *Chase Brass & Copper Workers Union*, 139 Conn. 591, 595–96, 96 A.2d 209 (1953). Had the parties restricted the authority of the arbitrators by including in their arbitration agreement a proviso that the arbitrators' award must not be contrary to law, the court would have been bound to enforce the restriction. See *Board of Trustees* v. *Federation of Technical College Teachers*, supra, 187; *Chase Brass & Copper Co.* v. *Chase Brass & Copper Workers Union*, supra, 594–96. Here there was no such proviso. The arbitration proceeding in this case was, therefore, both voluntary and unrestricted, and the court should not have subjected the arbitrators' conclusions to de novo review.

Applying the proper standard of review, the trial court should have limited its inquiry about the award of $20,000 in future medical expenses "to a comparison between the submission and the award to see whether, in accordance with the powers conferred upon the arbitrators, their award conforms to the submission." (Internal quotation marks omitted.) *Hartford* v. *Board of Mediation & Arbitration,* supra, 14. In this case, the arbitrators did precisely what they were empowered to do: they determined the amount of Bodner's damages. Therefore, this part of the award should be reinstated.[5]

### B

Bodner further claims that the trial court improperly concluded that common law punitive damages are not recoverable pursuant to the language of the USAA insurance contract, the public policy enunciated by § 38-175c, and the applicable regulations of the insurance commissioner. The arbitrators found facts to have been proven that would normally support an award of punitive or exemplary damages in a liability case. In their decision, they found "that the tortfeasor, Kenneth Church, was operating his motor vehicle on a public highway while he was clearly intoxicated, that he failed to stop for a red traffic signal, but instead smashed into the rear of the Claimant's motor vehicle which was lawfully stopped at said red traffic signal, and that thereafter, the said Kenneth Church evaded responsibility by leaving the scene of the accident . . . ." The arbitrators nevertheless determined, "as a matter of law, that punitive or exemplary damages are not recoverable pursuant to Section 38-175c of the

---

[5] We therefore need not examine Bodner's alternate claim that the trial court, even on a de novo review, should have concluded that there was sufficient evidence on the record to support the award of the arbitrators with regard to his future medical expenses.

Connecticut General Statutes and the subject insurance policy in issue in this case." The trial court concurred in the decision of the arbitrators.

Because, unlike the other issues that were before the arbitrators, the availability of punitive damages involved a "final determination of insurance coverage," § 38-175c made arbitration of this issue compulsory, not voluntary. This issue was therefore properly subjected to de novo review by the trial court and is now properly before this court. See *American Universal Ins. Co.* v. *DelGreco,* supra.

In undertaking our analysis of this issue as a matter of law, however, we note two considerations that are important to our disposition. One concerns the general measure of punitive damages in this state. The other concerns the specific measure of damages in this case.

The parties agree that the punitive damages that Bodner seeks are common law punitive damages, which in Connecticut are limited to the plaintiff's attorney's fees and nontaxable costs, and thus serve a function that is both compensatory and punitive. "[W]hen viewed in light of the ever rising costs of litigation, our rule does in effect provide for some element of punishment and deterrence in addition to the compensation of the victim. Thus, in limiting punitive damage awards to the costs of litigation less taxable costs, our rule fulfills the salutary purpose of fully compensating a victim for the harm inflicted on him while avoiding the potential for injustice which may result from the exercise of unfettered discretion by a jury." *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* 193 Conn. 208, 237–38, 477 A.2d 988 (1984); see also *Miller* v. *Drouin,* 183 Conn. 189, 190, 438 A.2d 863 (1981); *Doroszka* v. *Lavine,* 111 Conn. 575, 578, 150 A. 692 (1930).

Neither the arbitration decision nor the parties have, however, clearly articulated the particular punitive damages that Bodner claims to be entitled to recover in this case. The record does not specifically indicate whether the punitive damages that Bodner seeks are intended to compensate him for the attorney's fees that he incurred in pursuit of his rights against Church, the tortfeasor, or for the attorney's fees that he is presently incurring in pursuit of his rights against USAA. As best we can tell, it is the latter claim that is at issue before us.

From the perspective, therefore, of Bodner's alleged right to common law punitive damages measured by attorney's fees to be assessed against USAA for pursuit of his claim against USAA, two questions about insurance coverage arise. Does the language of the insurance policy cover such punitive damages? Does public policy encourage or forbid such coverage?

The USAA insurance policy states, in pertinent part: "We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury: 1. Sustained by a covered person; and 2. Caused by an accident." Identical language appears in § 38-175c (now § 38a-336), which requires insurance protection for those legally entitled to recover "damages" from the owners or operators of uninsured motor vehicles "because of bodily injury." USAA maintains that punitive damages are not "damages" incurred "because of bodily injury," because entitlement to such damages turns on the conduct of the tortfeasor rather than on the victim's injuries: a culpable tortfeasor may be liable for punitive damages even if the tort produces no bodily injury, but only property damage; and a victim suffering bodily injuries identical to Bodner's will not be entitled to punitive damages if the tortfeasor's conduct was not wilful or reckless.

We have twice before construed contract language similar to that at issue here. In *Tedesco* v. *Maryland Casualty Co.*, 127 Conn. 533, 18 A.2d 357 (1941), the plaintiff had recovered double damages against a driver covered by an insurance policy issued by the defendant, but the defendant had refused to pay more than the actual amount of damages. We held that the additional damages were not recoverable under the policy. "A policy which permitted an insured to recover from the insurer fines imposed for a violation of a criminal law would certainly be against public policy. The same would be true of a policy which expressly covered an obligation of the insured to pay a sum of money in no way representing injuries or losses suffered by the plaintiff but imposed as a penalty because of a public wrong. If the language of the policy is reasonably open to two constructions, one of which would avoid such a result, that should be adopted. In this case, the additional sum representing the doubling of the compensatory damages is, in its essence, a liability imposed, not for damages because of . . . bodily injury, but as a reward for securing the punishment of one who has committed a wrong of a public nature. The words [of the insurance policy in which the defendant agreed to pay 'all sums which the insured shall become obligated to pay by reason of'] 'liability imposed upon him [the insured] by law for damages . . . because of bodily injury' do not cover this additional sum." Id., 537–38.

In *Avis Rent A Car System, Inc.* v. *Liberty Mutual Ins. Co.*, 203 Conn. 667, 526 A.2d 522 (1987), however, we interpreted insurance policy language substantially similar to that construed in *Tedesco* as covering statutory punitive damages where these had been imposed vicariously. We concluded that the policy's "provision indemnifying Avis for 'all sums which the insured shall become legally obligated to pay as damages because of . . . bodily injury' can be reasonably construed to

include a judgment trebling a compensatory damages award because of the reckless nature of the conduct that produced the bodily injury. The 'bodily injury,' in this case the death of the victim in a head-on collision, was the event that caused Avis to become 'legally obligated to pay as damages' the entire judgment, including compensatory, exemplary and statutorily enhanced damages." Id., 671. It is apparent that *Avis'* construction of the phrase "because of . . . bodily injury" overruled that of *Tedesco.*

In denying Bodner's claim to punitive damages, the trial court in the present case placed considerable weight on one difference between the insuring language in the USAA policy and that construed in *Tedesco* and *Avis.* In each of those cases, the insurer had agreed to pay "all sums" which its insured became legally obligated to pay. USAA's contract, on the other hand, only requires the insurer to pay "damages" that the covered person is entitled to recover "because of bodily injury." USAA contends that the term "damages" is more restrictive than "all sums," and does not include punitive damages. This argument is unpersuasive. Black's Law Dictionary (6th Ed. 1990) defines "damages" as "[a] pecuniary compensation or indemnity, which may be recovered in the courts by any person who has suffered loss, detriment, or injury, whether to his person, property, or rights, through the unlawful act or omission or negligence of another." The Restatement (Second) of Torts § 12A defines the term as "a sum of money awarded to a person injured by the tort of another." It is evident from both of these definitions that common law punitive damages are an element of "damages."

Moreover, as Bodner notes, the more encompassing construction of the USAA policy finds support in the applicable insurance regulations and statutes. Section 38-175a-6 (a) of the Regulations of the Connecticut

State Agencies provides: "(a) COVERAGE. The insurer shall undertake to pay on behalf of the insured *all sums* which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle . . . because of bodily injury sustained by the insured caused by an accident involving the uninsured motor vehicle . . . ." (Emphasis added.) Moreover, General Statutes (Rev. to 1987) § 38-175d (now § 38a-338) provided: "Policies affording . . . uninsured motorist coverages to which the provisions of sections 38-175a to 38-175e, inclusive, apply shall be deemed to provide insurance under such coverages in accordance with such regulations."

USAA counters that the regulation, by using the phrase "all sums," has exceeded the scope of the statute by amending the more restrictive "damages" language, and so is void. See *Rose* v. *Freedom of Information Commission,* 221 Conn. 217, 229, 602 A.2d 1019 (1992); *Dukes* v. *Durante,* 192 Conn. 207, 226, 471 A.2d 1368 (1984); *Berlinski* v. *Ovellette,* 164 Conn. 482, 492 n.4, 325 A.2d 239 (1973). The purported conflict, however, rests on only one possible reading of the "damages" language, and as we have seen, that reading is not very persuasive. Regulatory interpretations of statutes are entitled to great weight, "especially when the applicable regulations have presumably gone through some form of legislative review." *Morton Buildings, Inc.* v. *Bannon,* 222 Conn. 49, 59, 607 A.2d 424 (1992); see *Phelps Dodge Copper Products Co.* v. *Groppo,* 204 Conn. 122, 129–30, 527 A.2d 672 (1987). "A person claiming the invalidity of a regulation has the burden of proving that it is inconsistent with or beyond the legislative grant. *Aaron* v. *Conservation Commission,* 183 Conn. 532, 537, 441 A.2d 30 (1981). The insurance commissioner has a 'very broad grant of regulatory authority' in filling in the interstices of the uninsured and underinsured motorist coverage legislation, and in

doing so his regulation is entitled to 'great deference.' *Roy* v. *Centennial Ins. Co.*, 171 Conn. 463, 473, 370 A.2d 1011 (1976). 'In view of the very broad grant of regulatory authority to the insurance commissioner, we are not persuaded that the commissioner was without authority to adopt regulation § 38-175a-6 [a].' Id." *Travelers Ins. Co.* v. *Kulla,* 216 Conn. 390, 399, 579 A.2d 525 (1990).

We nonetheless conclude that Bodner may not collect attorney's fees incurred in the pursuit of his claim against USAA. His claim runs afoul of the well established rule that, "in the absence of express contractual terms to the contrary, allowance of fees [against an insurer] . . . does not extend to services rendered in establishing the right to indemnification." *Burr* v. *Lichtenheim,* 190 Conn. 351, 363, 460 A.2d 1290 (1983). There are jurisdictions that expressly require an uninsured motorist insurer to pay attorney's fees if it unsuccessfully contests a claim; see 2 A. Widiss, Uninsured and Underinsured Motorist Insurance (2d Ed. 1990) § 20.5; but Connecticut is not one of them. We therefore conclude that Bodner's insurance contract does not provide him coverage for the specific punitive damages claim he is pursuing in this case.

Considerations of public policy support our conclusion that the insurance policy issued by USAA does not entitle Bodner to the punitive damages that he claims. Although we have not addressed the public policy issue in the context of uninsured motorist insurance, in *Tedesco* and in *Avis,* we have considered it in related insurance contexts.

*Tedesco* stands for the proposition that a tortfeasor may not protect himself from liability by seeking indemnity from his insurer for damages, punitive in nature, that were imposed on him for his own intentional or

reckless wrongdoing.[6] In *Avis*, by contrast, we determined that a claimant who had been held liable for punitive damages, under General Statutes § 14-154a, as the alter ego of the tortfeasor[7] was not barred, as a matter of public policy, from recourse to its insurance coverage. *Avis Rent A Car System, Inc.* v. *Liberty Mutual Ins. Co.*, supra, 674. We distinguished this result from that we had reached in *Tedesco* because the claimant in *Avis*, having been assigned liability by statutory fiat rather than as punishment for his own wrongdoing, had suffered an insurable risk. See G. Priest, "Insurability and Punitive Damages," 40 Ala. L. Rev. 1009, 1033 (1989).

Bodner argues that because Church, the culpable motorist, will not benefit from the inclusion of punitive damages in uninsured insurance benefits, *Avis* and not *Tedesco* governs this case. The matter is not, however, so simple. In both *Avis* and *Tedesco*, punitive lia-

---

[6] In so holding, however, this court distinguished, but did not disapprove, the reasoning of *Ohio Casualty Ins. Co.* v. *Welfare Finance Co.*, 75 F.2d 58 (8th Cir. 1934), cert. denied, 295 U.S. 734, 55 S. Ct. 645, 79 L. Ed. 1682 (1935), in which the insured, which was vicariously liable for common law punitive damages because of the negligent operation by its servant of a car that it owned, was permitted to recover under a policy that was worded similarly to the policy at issue in *Tedesco*. The court in *Ohio Casualty Ins. Co.* noted that the case did not involve acts of wilful injury by the insured, because the insured's liability was solely that of a master for acts of its servant. Id., 60; see *Tedesco* v. *Maryland Casualty Co.*, 127 Conn. 533, 538, 18 A.2d 357 (1941).

[7] *Avis Rent A Car System, Inc.* v. *Liberty Mutual Ins. Co.*, 203 Conn. 667, 526 A.2d 522 (1987), was the sequel to *Gionfriddo* v. *Avis Rent a Car System, Inc.*, 192 Conn. 280, 472 A.2d 306 (1984), in which we had held that liability was vicariously imposed on Avis under General Statutes § 14-154a only because "[t]he legislature ha[d] determined that the owner or the lessor of a motor vehicle shall be liable 'to the same extent as the operator would have been liable if he had also been the owner.' " Id., 287. We noted in *Gionfriddo* that "the statutory mandate . . . imposes liability to a significantly greater extent than vicarious liability at common law . . . ." Id., 288.

bility had already been imposed in a separate proceeding, and the only remaining issue was whether *that* liability should be borne by the insurer or the insured.

Translating the lessons of *Tedesco* and *Avis* into the uninsured motorist context suggests that *Tedesco* is the more relevant precedent. "The public policy established by the uninsured motorist statute is that every insured is entitled to recover for the damages he or she *would have been able to recover if the uninsured motorist had maintained a policy of liability insurance.*" (Emphasis added.) *Harvey* v. *Travelers Indemnity Co.*, 188 Conn. 245, 249, 449 A.2d 157 (1982). *Tedesco* makes clear that had Church, the uninsured motorist, maintained his own policy of liability insurance in this case, Bodner would not have been able to recover punitive damages from Church's insurer. "[A]llowing a recovery of punitive damages under uninsured motorist coverage would, in effect, place the insured in a better position than would exist if the tortfeasor had been insured." 1 A. Widiss, supra, § 12.6, p. 550. Further, unlike the insurer in *Avis*, USAA has no relationship whatsoever, direct or indirect, to the tortfeasor nor to the conduct underlying the claim for punitive damages, and cannot allocate even a portion of the risk of punitive damages to the tortfeasor by increasing the tortfeasor's insurance rates. For these reasons, many jurisdictions have held that uninsured motorist coverage does not apply to punitive damages. See 1 A. Widiss, supra, § 12.6.

Even for common law punitive damages, as they are defined in this state, there is no discernible reason of public policy why uninsured motorist coverage should impliedly encompass a claimant's right to recover attorney's fees for pursuit of a claim against his own insurer that is premised on the egregious misconduct of the third party tortfeasor. As USAA and the amicus curiae point out, the compensatory nature of common law

punitive damages cannot overshadow the underlying fact that such attorney's fees are awarded only when punishment of the tortfeasor is warranted. They remind us that, if compensation were the purpose, rather than the measure, of damages, attorney's fees would be awarded in all cases and not only in those involving wilful or reckless misconduct.

For all these reasons, Bodner was not entitled to recover on his claim for punitive damages against USAA. The trial court's decision denying him such a recovery must, therefore, be affirmed.

## II

In its cross appeal, USAA claims that the trial court: (1) should have vacated the arbitrators' award for lost earnings as lacking in evidentiary support; (2) should not have awarded interest to Bodner because of USAA's earlier tender of payment to Bodner for the undisputed portion of the award; and (3) should have dismissed Bodner's application to affirm the arbitration award because of Bodner's failure to comply strictly with the requirements of General Statutes § 52-421. With respect to each of these claims, we affirm the judgment of the trial court.

## A

In making an award to Bodner for his alleged loss of earnings, the arbitrators were proceeding in accordance with a voluntary and unrestricted submission to arbitration. The trial court upheld the award after a de novo review of USAA's claim that the evidence proffered by Bodner improperly failed to reflect the potential impact of tax liability on Bodner's net earnings. *Floyd* v. *Fruit Industries, Inc.,* 144 Conn. 659, 671-72, 136 A.2d 918 (1957); *Tesler* v. *Johnson,* 23 Conn. App. 536, 542, 583 A.2d 133 (1990), cert. denied, 217 Conn. 806, 584 A.2d 1192 (1991). We affirm the

award on a different basis. As we have held in part I A of this opinion, de novo review of this claim of law was inappropriate. "Ordinarily, where the authority to arbitrate devolves from contract, an unrestricted submission carries with it the power to decide, with finality, all issues of fact or law in the proceedings." *North Haven Assn. of Educational Support Staff* v. *Board of Education,* 209 Conn. 280, 285, 550 A.2d 1077 (1988). Where the submission is unrestricted, this court will not review the arbitrators' determination of questions of law. *O & G/O'Connell Joint Venture* v. *Chase Family Limited Partnership No. 3,* 203 Conn. 133, 154, 523 A.2d 1271 (1987).

## B

USAA next claims that the trial court should not have awarded prejudgment interest to Bodner. It premises this claim on the fact that it had earlier tendered payment to Bodner of the undisputed portion of the award. USAA alleged that its attorney had sent Bodner's attorney a check accompanied by a letter, dated May 3, 1991, that read as follows: "Enclosed please find USAA's draft in the amount of $228,416.33, representing payment of past medicals, past, present and future pain and suffering and permanent injury and disabilities less credit for two-thirds of the no fault lien." USAA offered the tender at Superior Court for the judicial district of New Haven on May 6, 1991, and Bodner rejected it on the same day.

General Statutes § 37-3a provides, with certain exceptions inapplicable here, that "interest . . . may be recovered and allowed in civil actions or arbitration proceedings under chapter 909 . . . as damages for the detention of money after it becomes payable . . . ." This provision, we have held, requires the trial court to "make a discretionary determination as to when the amount recoverable . . . under the policy was 'pay-

able' or whether it was 'wrongfully detained' . . . ."
*Middlesex Mutual Assurance Co.* v. *Walsh,* 218 Conn.
681, 702, 590 A.2d 957 (1991). Here, the court specifically found that "payment of money due and payable
to Bodner by [USAA] was wrongfully delayed by
[USAA]."

USAA claims, however, that the trial court improperly refused to permit USAA to explain the circumstances of the tender of payment. USAA maintains that
the court misconstrued *Middlesex* and *Chmielewski* v.
*Aetna Casualty & Surety Co.,* 218 Conn. 646, 675, 591
A.2d 101 (1991), as limiting the court's review to the
circumstances predating the arbitrators' award.[8]

---

[8] At the beginning of the oral argument, the following colloquy occurred:

"The Court: . . . I'm puzzled about this notice of [tender].

"Mr. Miller [attorney for USAA]: Yes, your Honor.

"The Court: What have I got to do with that.

"Mr. Miller: Well, I think, your Honor, well, I think since one of the issues, particularly one of the issues being raised deals with interests, Attorney Vaccaro is seeking interest that goes back to the date of the award. . . .

"The Court: This occurred, you're talking about something that occurred after the arbitrators rendered their award?

"Mr. Miller: Yes, that's correct.

"The Court: Forget it.

"Mr. Miller: Well, no the issue is—no, no, your Honor, I'm not—please don't misunderstand the purpose of this is not an offer of judgment at all but Attorney Vaccaro—

"The Court: Say what you want to say in your brief if you have anything to say, or in your argument.

"Mr. Miller: Okay.

"The Court: Don't bother me with that one, I've got enough problems. There are two more cases on interest that you can shake a stick at, there are two of them I think in the last month, last week.

"Mr. Miller: *Walsh.*

"The Court: *Walsh* and then there's another one.

"Mr. Miller: [*Chmielewski*].

"The Court: That's right, that came down last week after the *Walsh.*

"Mr. Miller: Well, they came down together in the same issue.

"The Court: That's right, they are, they are."

Later, when USAA attempted to present argument on this issue, the court stated: "I'm not going to listen to anything that took place after that award by the arbitrators, that's what is before me. . . . You can tell me

The record suggests, however, that the trial court made its award of interest on a different basis entirely. The court expressed its view that the tender was irrelevant to its discretionary determination of the propriety of an interest award, because the letter could reasonably have been construed as a settlement offer.[9] The court's construction of USAA's letter finds support in the absence of any indication in the letter that Bodner might accept the tender without prejudice to the remaining disputes between the parties.[10] A reasonable reader could therefore have considered the letter to be an offer to settle the case.

USAA did not seek articulation, pursuant to Practice Book § 4051, of the basis of the trial court's decision to award interest, and therefore has not met its burden of presenting us with an adequate record of review. See *Cutter Development Corporation* v. *Peluso,* 212 Conn. 107, 115 n.5, 561 A.2d 926 (1989); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 222 n.5, 435 A.2d 24 (1980). Absent such an articulation, we presume that the trial court properly relied on a reasonable construction of the tender documents and made a proper award of interest.

about anything about your conduct or what you did before the award, but not after the award." The court also stated: "Well, you're not getting very far when you talk about things that occurred after the award, so please don't do it again, I've made a ruling on it."

[9] The court stated during the second colloquy quoted in the previous footnote: "I'm not going to listen to it, I don't think I should. You can do what you want to do to try to settle your case at any time with negotiations and that's what you're talking about."

[10] USAA contends that it should have been clear that the tender was not a settlement offer "since the tender directly tracked the wording of the arbitrators' award. [USAA] was no longer contesting one aspect of the award and attempted to offer that portion to [Bodner]." Even if it had somehow occurred to Bodner to lay the two documents next to one another to compare their language, however, it is hardly clear that he would or could thereby have deduced that acceptance of the offer would not have prejudiced his claim to the remaining, contested part of the award.

## C

Finally, USAA contends that the trial court improperly denied its motion to dismiss Bodner's application to confirm, modify and correct the arbitration award. On March 12, 1991, when Bodner filed his application, he did not append the insurance agreement or the award to his original application. This documentation was not filed until March 29, 1991. General Statutes § 52-421 (a)[11] provides in pertinent part: "Any party applying for an order confirming, modifying or correcting an award shall, at the time the order is filed with the clerk for the entry of judgment thereon, file the following papers with the clerk: (1) The agreement to arbitrate . . . (5) the award . . . ." Relying on the familiar principle that "[a] statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created"; *Farricielli* v. *Personnel Appeal Board,* 186 Conn. 198, 201,

[11] General Statutes § 52-421 provides: "RECORD TO BE FILED WITH CLERK OF COURT. EFFECT AND ENFORCEMENT OF JUDGMENT OR DECREE. (a) Any party applying for an order confirming, modifying or correcting an award shall, at the time the order is filed with the clerk for the entry of judgment thereon, file the following papers with the clerk: (1) The agreement to arbitrate, (2) the selection or appointment, if any, of an additional or substitute arbitrator or an umpire, (3) any written agreement requiring the reference of any question as provided in section 52-415, (4) each written extension of the time, if any, within which to make the award, (5) the award, (6) each notice and other paper used upon an application to confirm, modify or correct the award, and (7) a copy of each order of the court upon such an application.

"(b) The judgment or decree confirming, modifying or correcting an award shall be docketed as if it were rendered in a civil action. The judgment or decree so entered shall have the same force and effect in all respects as, and be subject to all the provisions of law relating to, a judgment or decree in a civil action; and it may be enforced as if it had been rendered in a civil action in the court in which it is entered. When the award requires the performance of any other act than the payment of money, the court or judge entering the judgment or decree may direct the enforcement thereof in the manner provided by law for the enforcement of equitable decrees."

440 A.2d 286 (1982); USAA claims that Bodner's failure to file these exhibits at the time of his application deprived the trial court of subject matter jurisdiction. Bodner maintains, to the contrary, that his filing was timely because the statute only requires the moving party to file the required papers "at the time the order is filed with the clerk for the entry of judgment thereon," an event that necessarily occurs after the court has ruled on the application.

Even if there were merit in USAA's claim that Bodner had not strictly complied with the statute, such a default would not have deprived the trial court of subject matter jurisdiction. We do not read § 52-421 as limiting the jurisdiction of the court. The dispute between the parties arose out of their mutual agreement to a contract that included an arbitration provision. Although their recourse to arbitration was validated by the applicable statutes; see General Statutes § 52-408 et seq.; their dispute continued to be contractual. The subject matter jurisdiction of the Superior Court over disputes arising out of contract is not created by the arbitration statutes, but is inherent in the judicial power conferred on the court by the constitution.[12] This claim is therefore unpersuasive.

The judgment is affirmed in part and reversed in part, and the case is remanded with direction to reinstate the arbitrators' award to the plaintiff of $20,000 for future medical treatment.

In this opinion the other justices concurred.

---

[12] Article fifth, § 1 of the constitution of Connecticut, as amended, provides: "The judicial power of the state shall be vested in a supreme court, an appellate court, a superior court, and such lower courts as the general assembly shall, from time to time, ordain and establish. The powers and jurisdiction of these courts shall be defined by law."