ROBERT F. CAULFIELD ET AL. *v.* AMICA MUTUAL
INSURANCE COMPANY ET AL.
(11545)

DUPONT, C. J., FOTI and FREEDMAN, Js.

Argued May 11—decision released July 6, 1993

*Michele A. Caulfield,* with whom was *Kevin P. Thornton,* for the appellants (plaintiffs).

*Constance L. Epstein,* for the appellee (named defendant).

*Scott B. Clendaniel,* for the appellee (defendant Travelers Insurance Company).

FREEDMAN, J. The issue presented by this appeal is whether statutory multiple damages pursuant to General Statutes § 14-295[1] are recoverable under the uninsured motorist provision of an automobile insurance policy. We conclude that such damages are not recoverable under the uninsured motorist provision of an automobile policy.

The facts are not in dispute. On March 5, 1989, the plaintiffs, Robert F. Caulfield and Carolyn L. Caulfield, were backseat passengers in an automobile being driven by Judson Rigney, when the vehicle was struck head-on, in its own lane of traffic, by another vehicle

---

[1] "[General Statutes] Sec. 14-295. DOUBLE OR TREBLE DAMAGES FOR PERSONS INJURED AS A RESULT OF CERTAIN TRAFFIC VIOLATIONS. In any civil action to recover damages resulting from personal injury, wrongful death or damage to property, the trier of fact may award double or treble damages if the injured party has specifically pleaded that another party has deliberately or with reckless disregard operated a motor vehicle in violation of section 14-218a, 14-219, 14-222, 14-227a, 14-230, 14-234, 14-237, 14-239 or 14-240a, and that such violation was a substantial factor in causing such injury, death or damage to property."

operated by an intoxicated individual who was uninsured. The collision killed Rigney and seriously injured his wife and the plaintiffs. The operator of the other vehicle later pleaded guilty to one count of manslaughter in the first degree and three counts of assault in the first degree.

At the time of the accident, there was uninsured motorist coverage under both Rigney's automobile insurance policy with the defendant Amica Mutual Insurance Company (Amica) and the plaintiffs' own automobile insurance policy with the defendant Travelers Insurance Company (Travelers).

The Amica policy provides with respect to uninsured motorist coverage: "We will pay damages which an *insured* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle* because of bodily injury . . . sustained by an *insured* . . . and . . . caused by an accident." (Emphasis in original.) A policy endorsement provides the following exclusion from uninsured motorist coverage: "We do not provide coverage for punitive or exemplary damages."

The Travelers policy similarly states with respect to uninsured motorist coverage: "We will pay all sums the 'insured' is legally entitled to recover as damages from the owner or driver of an 'uninsured motor vehicle.' The damages must result from 'bodily injury' sustained by the 'insured' caused by an 'accident.' " A policy endorsement modified the uninsured motorist coverage to provide that "[t]his insurance does not apply to punitive or exemplary damages."

Both of the insurance policies contain written agreements for arbitration. In accordance with the policy terms, the plaintiffs went before a panel of arbitrators seeking an award of compensatory damages, common law punitive damages and statutory multiple damages pursuant to General Statutes § 14-295.

The arbitration panel unanimously awarded the plaintiff Robert F. Caulfield compensatory damages in the amount of $450,000 and the plaintiff Carolyn L. Caulfield compensatory damages in the amount of $45,000. By a two-to-one vote in each instance, however, the panel determined that statutory multiple damages and common law punitive damages may not be awarded in this matter.

After the defendant Amica made full payment of the plaintiffs' compensatory damage awards, which are not at issue in this matter, the plaintiffs filed an application with the Superior Court seeking to vacate those portions of the arbitrators' award denying the plaintiffs' requests for statutory multiple damages and common law punitive damages and to confirm the award in all other respects. The defendants filed corresponding applications seeking to confirm the award in its entirety. The trial court granted the plaintiffs' application insofar as it sought to confirm the award of compensatory damages but denied their application insofar as it sought to vacate the denial of common law punitive and statutory multiple damages. The court also granted the defendants' applications to confirm the arbitration award.

The plaintiffs have appealed from the judgment of the trial court, claiming that the court improperly refused to vacate that portion of the award denying their requests for statutory multiple damages pursuant to General Statutes § 14-295.[2] The plaintiff contends that the trial court improperly concluded that statutory multiple damages are not recoverable pursuant to the language of the insurance policies, the public policy

[2] The plaintiffs properly concede that the holding of our Supreme Court in *Bodner* v. *United Services Automobile Assn.,* 222 Conn. 480, 610 A.2d 1212 (1992), precludes their recovery of common law punitive damages and therefore do not challenge the judgment of the trial court with regard to such damages.

enunciated by General Statutes (Rev. to 1989) § 38-175c (now § 38a-336), and the applicable regulations of the insurance commissioner. We disagree.

The availability of statutory multiple damages involves a final determination of insurance coverage. *Bodner* v. *United Services Automobile Assn.*, 222 Conn. 480, 492, 610 A.2d 1212 (1992). General Statutes (Rev. to 1989) § 38-175c (now § 38a-336) makes arbitration of this issue compulsory, not voluntary. Id. Consequently, this question of law is properly subjected to de novo review by the trial court and by this court. Id.; *Allstate Ins. Co.* v. *Howe,* 31 Conn. App. 132, 137, 623 A.2d 1031 (1993).

In *Tedesco* v. *Maryland Casualty Co.,* 127 Conn. 533, 537–38, 18 A.2d 357 (1941), our Supreme Court determined that double damages awarded pursuant to a predecessor to § 14-295 are not "damages because of bodily injury" within the meaning of the insurance policy at issue in that case. In *Avis Rent A Car System, Inc.* v. *Liberty Mutual Ins. Co.,* 203 Conn. 667, 526 A.2d 522 (1987), however, our Supreme Court interpreted policy language substantially similar to that construed in *Tedesco,* and identical to that contained in the Travelers policy in issue in this case, as permitting coverage of statutorily enhanced damages where these had been imposed vicariously. "It is apparent that *Avis'* construction of the phrase 'because of . . . bodily injury' overruled that of *Tedesco." Bodner* v. *United Services Automobile Assn.,* supra, 495. Likewise, in *Bodner,* the court determined that policy language identical to that contained in the Amica policy at issue in this case did not preclude coverage of common law punitive damages. Id., 493–97. The court noted that this broad construction of the policy lan-

guage finds support in the applicable insurance regulations and statutes. Id., 495–97.[3]

Notwithstanding policy language that would permit coverage of common law damages, the *Bodner* court concluded that public policy considerations precluded such coverage in the context of uninsured motorist coverage. After examining the contrasting policy considerations underlying the *Tedesco* and *Avis* cases and applying the lessons of *Tedesco* and *Avis* in the uninsured motorist context, the *Bodner* court concluded that *Tedesco* provided the more relevant precedent: " 'The public policy established by the uninsured motorist statute is that every insured is entitled to recover for the damages he or she *would have been able to recover if the uninsured motorist had maintained a policy of liability insurance.'* (Emphasis added.) *Harvey* v. *Travelers Indemnity Co.,* 188 Conn. 245, 249,

---

[3] We note that the policy endorsements excluding coverage for "punitive or exemplary damages" do not preclude payment of statutory multiple damages pursuant to General Statutes § 14-295. Under Connecticut common law, the terms "exemplary damages" and "punitive damages" are interchangeable labels for damages awarded under certain circumstances to compensate a plaintiff for his expenses of litigation. *Alaimo* v. *Royer,* 188 Conn. 36, 42–43, 448 A.2d 207 (1982). It is well settled, however, that statutory multiple damages awarded pursuant to § 14-295, while serving a similar punitive purpose; see *Tedesco* v. *Maryland Casualty Co.,* 127 Conn. 533, 537–38, 18 A.2d 357 (1941); *Jack* v. *Scanlon,* 4 Conn. App. 451, 454–55, 495 A.2d 1084, cert. dismissed, 197 Conn. 808, 499 A.2d 59 (1985); are separate and distinct from common law punitive damages and are awarded in addition thereto in appropriate cases. *Alaimo* v. *Royer,* supra, 43; see *Gionfriddo* v. *Avis Rent A Car System, Inc.,* 192 Conn. 280, 472 A.2d 306 (1984). The policy exclusions for punitive and exemplary damages are therefore ambiguous, at best, as to whether they encompass statutory multiple damages pursuant to § 14-295. "When the words of an insurance contract are, without violence, susceptible of two interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted. . . . If the terms of an insurance policy are of doubtful meaning, that permissible construction which is most favorable to the insured is to be adopted . . . ." (Citations omitted; internal quotation marks omitted.) *Avis Rent A Car System, Inc.* v. *Liberty Mutual Ins. Co.,* 203 Conn. 667, 672, 526 A.2d 522 (1987).

449 A.2d 157 (1982). *Tedesco* makes clear that had [the tortfeasor], the uninsured motorist, maintained his own policy of liability insurance in this case, [the plaintiff] would not have been able to recover punitive damages from [the tortfeasor's] insurer. '[A]llowing a recovery of punitive damages under uninsured motorist coverage would, in effect, place the insured in a better position than would exist if the tortfeasor had been insured.' 1 A. Widiss, [Uninsured and Underinsured Motorist Insurance (2d Ed. 1990)] § 12.6, p. 550. Further, unlike the insurer in *Avis*, [the insurer here] has no relationship whatsoever, direct or indirect, to the tortfeasor nor to the conduct underlying the claim for punitive damages, and cannot allocate even a portion of the risk of punitive damages to the tortfeasor by increasing the tortfeasor's insurance rates." *Bodner* v. *United States Automobile Assn.,* supra, 499.

Recognizing that our Supreme Court's reasoning in *Bodner* would appear to apply with equal, if not greater,[4] force to a claim for uninsured motorist cover-

---

[4] Given that the *Bodner* court concluded that *Tedesco* is the more relevant precedent in the context of uninsured motorist coverage, we note the following language from *Tedesco*: "A policy which permitted an insured to recover from the insurer fines imposed for a violation of a criminal law would certainly be against public policy. The same would be true of a policy which expressly covered an obligation of the insured to pay a sum of money in no way representing injuries or losses suffered by the plaintiff but imposed as a penalty because of a public wrong." *Tedesco* v. *Maryland Casualty Co.,* 127 Conn. 533, 537, 18 A.2d 357 (1941).

The nature of both the common law punitive damages at issue in *Bodner* and the statutory multiple damages at issue in this case is that they are imposed to punish the wrongdoer. *Bodner* v. *United Services Automobile Assn.,* 222 Conn. 480, 500, 610 A.2d 1212 (1992); *Bishop* v. *Kelly,* 206 Conn. 608, 613–14, 539 A.2d 108 (1988). Statutory multiple damages, however, are imposed for the sole purpose of punishment of one who has committed a public wrong; *Tedesco* v. *Maryland Casualty Co.,* supra, 537–38; while "common law punitive damages, which in Connecticut are limited to the plaintiff's attorney's fees and nontaxable costs . . . serve a function that is both compensatory and punitive." *Bodner* v. *United Services Automobile Assn.,* supra, 492.

age of damages under § 14-295, the plaintiff argues that the *Bodner* court's reasoning is faulty. Specifically, the plaintiff asserts that *Avis* is the more relevant precedent in the uninsured motorist context and that the public policy considerations identified in *Bodner* do not accurately reflect either the intent of our uninsured motorist statute or the implications of the contractual relationship between an insured and an insurer in the uninsured motorist context. Even if we were to find these arguments to be persuasive, "[w]e are not free . . . to disregard . . . Supreme Court precedent . . . ." *Board of Education* v. *Bridgeport Education Assn.,* 9 Conn. App. 199, 203, 518 A.2d 394 (1986), cert. denied, 202 Conn. 802, 519 A.2d 1206 (1987). Whether the reasoning underlying a recent Supreme Court holding should be reevaluated and possibly discarded is not for this court to decide. Id., 203–204; *D'Arcy* v. *Shugrue,* 5 Conn. App. 12, 29, 496 A.2d 967, cert. denied, 197 Conn. 817, 500 A.2d 1336 (1985). Our reading of *Bodner* v. *United Services Automobile Assn.,* supra, convinces us that there is no principled way to distinguish *Bodner* from the present case without wholly ignoring the reasoning articulated therein by our Supreme Court.

The judgment is affirmed.

In this opinion the other judges concurred.