******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# NATIONWIDE MUTUAL INSURANCE COMPANY ET AL. *v.* JEFFREY S. PASIAK ET AL.
## (SC 19618)

Rogers, C. J., and Palmer, Eveleigh, McDonald,
Espinosa, Robinson and D'Auria, Js.*

*Syllabus*

The plaintiff insurance companies sought a declaratory judgment to determine, inter alia, whether they were obligated to indemnify the defendant P in connection with a successful underlying tort action brought against him by the defendants S and S's husband. The tort action involved an incident that occurred when S, who recently had been hired by P's construction company to perform office duties, was working alone in an office located in P's home. An armed, masked intruder entered that office and tied S's hands, gagged and blindfolded her, and, pointing a gun at her head, threatened to kill her family if she did not give him the combination to a safe in the home. P returned home during the incident and unmasked the intruder, discovering that the intruder was K, P's friend. After S was untied, she asked to leave, but P told her to stay. Although S told P about the threats that K had made to her, P would not let S call the police. S remained with P for several hours in fear that, if she left, K might harm her or her family. S eventually left later that day, and the police subsequently were contacted. K was arrested and charged with various offenses related to the incident. At the time of the incident, P was covered by homeowners and umbrella insurance policies issued by the plaintiffs, but he did not have a separate commercial liability policy. The plaintiffs provided P with an attorney to defend him in the tort action but notified him that they were reserving their right to contest coverage. In the tort action, which included an allegation of false imprisonment, the jury returned a general verdict for S and her husband, awarding compensatory and punitive damages. In the declaratory judgment action, the trial court granted P's motion for summary judgment as to the plaintiffs' duty to defend P in the tort action, but, following judgment in the tort action, denied the plaintiffs' motion for summary judgment regarding the plaintiffs' duty to indemnify P under the umbrella policy, as the injury of false imprisonment was covered under that policy. Following a trial to the court, in which only documentary evidence, largely originating from the tort action, was submitted, the court concluded that the business pursuits exclusion to the umbrella policy, which excluded from coverage occurrences arising out of business pursuits, did not apply and rendered judgment for P. The plaintiffs appealed to the Appellate Court, challenging the trial court's limitations on discovery, the scope of the declaratory judgment trial, the court's determinations regarding certain of the policy exclusions, and its rejection of their public policy argument regarding indemnification for punitive damages. The Appellate Court reversed the trial court's judgment, determining that that court improperly had concluded that the business pursuits exclusion of the umbrella policy did not apply. On the granting of certification, P appealed to this court, contending that the Appellate Court improperly determined, inter alia, that S's acquiescence in obeying P's commands was a function of their employer-employee relationship and that the false imprisonment of S was therefore an occurrence arising out his business pursuits that was excluded from coverage under his umbrella policy. *Held*:

1. The Appellate Court and the trial court having employed an incorrect standard for determining whether P's tortious conduct was an occurrence arising out of his business pursuits, and there not having been sufficient evidence in the record to conclude whether the business pursuits exclusion applied as a matter of law, this court reversed the Appellate Court's judgment with direction to remand the case for a trial de novo at which the trial court must resolve the factual issue of whether P's false imprisonment of S arose out of his business pursuits in operating his company in determining whether S's claim for false imprisonment was excluded from coverage under the business pursuits exclusion in

P's umbrella policy: the trial court improperly focused on K's actions as they may have related to the actual profitability of P's business rather than considering P's purported statements to and actions toward S as they may have related to P's business or the employment relationship and incorrectly indicated that an act could fall within the exclusion only if was exclusively in furtherance of P's business pursuits, and the Appellate Court relied too heavily on S's employment status and the work based location at which she sustained her injury; moreover, the purpose of the particular act giving rise to liability, its nature and its relationship, or lack of relationship, to the business, or use of the employment relationship or status to effectuate the harmful act may support the requisite causal nexus for purposes of establishing that the act arose out a business pursuit.

2. The plaintiffs could not prevail on any of their alternative grounds for affirming in whole or in part the Appellate Court's judgment: the workers' compensation exclusion in P's umbrella policy did not preclude indemnification because the evidence established that S was an employee of P's company, and P, the insured, would not have personally incurred any obligation to pay a compensable workers' compensation claim if S had timely filed a notice of such claim and, in any event, the plaintiffs failed to establish that S's injuries would have been compensable; furthermore, the exclusion in the policy for personal injury resulting from physical or mental abuse did not apply as a matter of policy construction, the covered occurrence of false imprisonment having constituted a specific intentional act expressly covered by the policy, and any maltreatment undertaken by P to commit the false imprisonment was not of such independent consequence as to distinguish it from that inherent in the intentional tort; moreover, this court concluded that, in the absence of a public policy reflected in this state's laws against providing coverage for common-law punitive damages, under the facts of the present case, the plaintiffs were bound to keep the bargain they had struck with P, which included providing coverage for such damages for false imprisonment.

3. This court concluded that, on remand, the plaintiffs are entitled to appropriate discovery and a trial de novo to determine whether they have met their burden of proving that the business pursuits exclusion bars coverage: there was no privity between the plaintiffs and P as to that issue in the underlying tort action because they did not share an interest in proving that P's false imprisonment of S arose out of his business pursuits, it having been the interest of both P and S to minimize or avoid presentation of facts that could have established a connection between P's interests as the owner of the construction company and the wrongful actions he was alleged to have undertaken, and the issue of whether that causal connection existed was neither actually litigated nor necessarily determined; furthermore, it was of no consequence that the plaintiffs did not seek permission to intervene in the tort action, the plaintiffs having had no such right, and it would have been an abuse of discretion to allow permissive intervention to litigate their policy exclusion in the tort action.

(*Two justices concurring and dissenting in one opinion*)

Argued December 5, 2016—officially released December 19, 2017

*Procedural History*

Action for a declaratory judgment to determine whether the plaintiffs were obligated to defend and indemnify the named defendant under certain insurance policies for damages awarded against him in a separate tort action, brought to the Superior Court in the judicial district of Stamford-Norwalk and transferred to the Complex Litigation Docket, where the court, *Brazzel-Massaro, J.*, denied the plaintiffs' motion for summary judgment and granted the motion for summary judgment filed by the named defendant et al. as to the duty to defend under the policies; thereafter, the named defendant filed a counterclaim; subsequently, the court granted in part the plaintiffs' motion for summary judg-

ment as to the duty to indemnify under the homeowners insurance policy; thereafter, the court granted the plaintiffs' motion to bifurcate the trial and the matter was tried to the court, *Brazzel-Massaro, J.*, on the complaint only; judgment for the named defendant et al. on count two of the complaint determining that the plaintiffs were required to indemnify under the umbrella policy, from which the plaintiffs appealed to the Appellate Court, *Keller, Prescott* and *West, Js.*, which reversed the trial court's judgment and remanded the case with direction to render judgment for the plaintiffs on count two of the amended complaint and to dismiss as moot their appeal regarding their duty to defend under the umbrella policy, and the named defendant et al., on the granting of certification, appealed to this court. *Reversed; further proceedings.*

*David J. Robertson*, with whom were *Christopher H. Blau*, and, on the brief, *Madonna A. Sacco*, for the appellants (named defendant et al.).

*Robert D. Laurie*, with whom, on the brief, were *Heather L. McCoy* and *Elizabeth F. Ahlstrand*, for the appellees (plaintiffs).

*Opinion*

McDONALD, J. This declaratory judgment action concerns whether an insurer is obligated to indemnify a business owner under a personal insurance policy for liability arising from his false imprisonment of his company's employee at her workplace and the evidentiary basis on which such a determination is to be made. In this certified appeal, the defendant Jeffrey S. Pasiak[1] challenges the Appellate Court's determination that such liability fell under the business pursuits exclusion to coverage under his personal umbrella policy. The plaintiffs, Nationwide Mutual Insurance Company and Nationwide Mutual Fire Insurance Company, contend that coverage not only is barred under the business pursuits exclusion, but also that (1) coverage is barred under policy exclusions for workers' compensation obligations and for mental abuse, (2) construing the policy to provide indemnification for common-law punitive damages arising from intentional wrongdoing violates public policy, and (3) the trial court improperly limited the scope of discovery and the declaratory judgment trial, depriving the plaintiffs of a trial de novo on coverage issues that they could not litigate in the underlying tort action.

We hold that the case must be remanded to the trial court for further proceedings, limited to the issue of whether the business pursuits exclusion applies. We conclude that neither the Appellate Court nor the trial court employed the correct standard for determining whether the defendant's tortious conduct was an occurrence "arising out of" the business pursuits of the insured and that further factual findings would be necessary to determine whether this exception applies under the correct standard. We further conclude that the plaintiffs cannot prevail on their alternative grounds regarding the other exclusions and public policy as a matter of law. Finally, we conclude that the plaintiffs are not limited to the evidentiary record in the underlying tort action to establish that the business pursuits exclusion barred coverage. Accordingly, we reverse the judgment of the Appellate Court with direction to remand the case to the trial court for a trial de novo on that issue.

I

BACKGROUND

The Appellate Court's opinion summarized the facts that the jury reasonably could have found in the underlying tort action; see *Nationwide Mutual Ins. Co.* v. *Pasiak*, 161 Conn. App. 86, 90–91, 127 A.3d 346 (2015); which we have supplemented with the limited additional facts found by the trial court in the declaratory judgment action, also gleaned from the evidence in the underlying action.[2] At the time of the incident in question, the defendant operated a construction company,

Pasiak Construction Services, LLC. The sole office for the company was a room located on the second floor of the defendant's home in Stamford; the company's construction equipment was stored at another site. Sara Socci was hired by the defendant to perform duties as an office worker for the construction company and worked at that office in the defendant's home. Her work hours were from 9:30 a.m. to 2:30 p.m., four days a week.

During Socci's second week of employment, while she was alone at the office performing her duties, a masked intruder carrying a gun entered the office and demanded that she open the safe. Unaware that a safe existed in the home, Socci could not provide the intruder with the safe's combination. The intruder led Socci into a bedroom, where he tied her hands, gagged her, and blindfolded her. At one point, he pointed a gun at her head and threatened to kill her family if she did not give him the combination.

The defendant returned home during the incident and was attacked by the intruder. During an ensuing struggle, the defendant pulled off the intruder's mask, revealing him to be Richard Kotulsky, a lifelong friend of the defendant. The defendant began talking to Kotulsky and inquired about Socci. Kotulsky led the defendant to Socci, who was crying and hysterical. After the defendant made Kotulsky untie Socci, the three of them returned to the office, where a discussion continued between the defendant and Kotulsky about a woman.[3] Socci asked to leave, but the defendant told her to stay and sit down. After further discussions with Kotulsky, the defendant allowed him to leave the house. Socci then told the defendant about the threats that Kotulsky had made to her and her family, but the defendant would not call the police. He told Socci to stay with him and refused to let her call the police or to discuss the incident further. She remained with the defendant for several hours, in fear that, if she left, she or her family might be harmed by Kotulsky. Only after he drove Socci to Greenwich to discuss the incident with a mutual friend, Denise Taranto, who advised them to call the police, did he allow Socci to leave.

The police were not contacted until later that day, after Socci and her husband, Kraig Socci, went to the defendant's home and learned that he had not yet contacted them. In the presence of the Soccis and the police, the defendant telephoned Kotulsky and told him that "the girl" had identified him to the police. Some days later, Kotulsky was arrested and eventually convicted of various criminal offenses in connection with this incident.[4] The safe was never opened, and its contents were never divulged.

As a result of the incident, Socci developed post-traumatic stress disorder, requiring extensive therapy, and was unable to return to work.

The record reveals the following additional undisputed facts and procedural history. Socci and Kraig Socci commenced a tort action against the defendant (Socci action), alleging (1) false imprisonment, (2) negligence, (3) negligent infliction of emotional distress, (4) intentional infliction of emotional distress, and (5) loss of consortium as to Kraig Socci.[5] The first two claims related to the defendant's conduct in preventing Socci from leaving until she and the defendant returned from their meeting with Taranto. The third and fourth claims related to the entirety of the defendant's conduct leading up to his comments on the telephone to Kotulsky implicating Socci as the police informant. The complaint alleged that Socci had sustained permanent physical and emotional injuries and requested compensatory and punitive damages.

At the time of the relevant events, the defendant was covered by insurance policies issued by the plaintiffs, including a homeowners policy covering bodily injury and a personal umbrella policy covering bodily injury and personal injury. He did not have a separate commercial liability policy. The plaintiffs provided the defendant with an attorney to defend him in the Socci action, but notified him by letter that they were reserving their right to contest coverage.

In accordance with that reservation, the plaintiffs commenced the present action seeking a declaration that they had no duty to defend or indemnify the defendant in the Socci action. The plaintiffs then filed a motion for summary judgment, and the defendant filed a motion for summary judgment solely as to the duty to defend. The court concluded that the allegations of the complaint were sufficiently broad to obligate the plaintiffs to provide the defendant with a defense under both his homeowners policy and his personal umbrella policy. The court deemed it improper at that juncture to determine the plaintiffs' duty to indemnify the defendant. Accordingly, it granted the defendant's motion for summary judgment as to the duty to defend and denied the plaintiffs' motion seeking a declaratory judgment in their favor.

The Socci action proceeded to trial with the plaintiffs providing defense counsel to the defendant. At the conclusion of evidence, the parties agreed not to submit special interrogatories to the jury. The jury returned a general verdict in favor of the Soccis. It awarded Socci $628,200 in compensatory damages and $175,000 in punitive damages, and awarded Kraig Socci $32,500 in compensatory damages.

Following judgment in the Socci action, the plaintiffs filed a second motion for summary judgment in the declaratory judgment action regarding their duty to indemnify the defendant.[6] In support of their motion, the plaintiffs argued that the defendant's policies did

not provide coverage for his liability in the Socci action because those policies cover accidents, not intentional acts, and do not cover claims for emotional distress. The plaintiffs further contended that any coverage would be barred under policy exclusions for intentional acts, wilful violations of law, business pursuits, workers' compensation, and mental abuse. Finally, they contended that indemnification for the punitive damages would contravene public policy.

The trial court framed its decision on the motion in three parts: (1) the effect of the general verdict; (2) the duty to indemnify under the homeowners policy; and (3) the duty to indemnify under the umbrella policy. The court concluded that the general verdict rule[7] precluded the plaintiffs' arguments premised on characterizing the defendant's conduct as exclusively intentional and, therefore, not a covered accidental occurrence. The court reasoned that the absence of jury interrogatories created an ambiguity as to the counts on which the verdict rested, and that because the *plaintiffs* had failed to afford themselves of the opportunity to seek such interrogatories, the verdict must be construed to rest on both intentional and negligent conduct as alleged in the complaint. The court did not, at this stage, explain how the plaintiffs could have availed themselves of this opportunity.

With regard to the duty to indemnify, the court concluded that the plaintiffs were entitled to summary judgment under the homeowners policy, but were not entitled to judgment under the broader umbrella policy. Specifically, the court pointed to the homeowners policy coverage limited to "bodily injury," which was defined to exclude emotional distress unless caused by a physical injury, and the lack of evidence in the Socci action establishing such physical injury. Although the umbrella policy contained a similar definition for bodily injury, that policy also covered "personal injury," a term defined by reference to specified injuries/acts, including "false imprisonment." In light of that express coverage, the trial court concluded that many of the policy exclusions on which the plaintiffs relied were inapplicable. The court also concluded that the requisite facts to support other exclusions on which the plaintiffs relied were not supported by evidence or jury interrogatories in the Socci action. The court rejected the plaintiffs' public policy argument regarding the punitive damages. Accordingly, it granted in part and denied in part the plaintiffs' motion for summary judgment.

After the trial court clarified that its decision on the motion for summary judgment was not a final judgment for purposes of appeal, a dispute arose over the scope of evidence, and, hence, discovery, that would be permitted in the declaratory judgment trial. In a written decision addressing that dispute, the trial court cast the parties' positions as polar opposites, with the plaintiffs

contending that they were entitled to a trial de novo regarding the issue of indemnification, unfettered as to what evidence may be proffered on that issue, and the defendant contending that the trial must be limited to the evidence presented in the Socci action. Ultimately the court concluded that "[i]t was [the plaintiffs'] choice in the [Socci] action to not actively pursue in greater detail the issues affecting the exclusions in the policy," that the plaintiffs could have submitted interrogatories to the jury to determine the basis of its decision, and that they should not be permitted to have a second bite at the apple. The court suggested that the plaintiffs could have requested interrogatories through defense counsel, with whom they were in close contact, or through their intervention as a party. Accordingly, it denied the plaintiffs' request to permit unrestricted evidence. However, a week before the trial commenced, the court permitted the plaintiffs to obtain certain limited discovery related to the workers' compensation exclusion, and they were able to depose the defendant on that matter. At the conclusion of that deposition, the plaintiffs stated for the record that the trial court had precluded discovery on matters other than those on which they questioned the defendant that the plaintiffs believed were relevant.

Thereafter, the declaratory judgment trial proceeded with only documentary evidence submitted to the court, largely originating from the Socci action, except as to certain matters related to workers' compensation. Following argument, the court issued a decision declaring that the plaintiffs were obligated to indemnify the defendant for his liability in the Socci action. In setting forth the procedural history of the case, the court cast its earlier ruling on the scope of discovery as precluding new evidence relating to the basis of liability in the Socci action, and not that relating to the issue of coverage under the policy. In analyzing the substantive issue, the court largely followed its prior reasoning when denying the plaintiffs' motion for summary judgment. Accordingly, it rendered judgment for the defendant.

The plaintiffs appealed from the judgment to the Appellate Court. They challenged the trial court's limitations on discovery, the scope of the declaratory judgment trial, the court's determinations regarding the policy exclusions, except the intentional acts and wilful violation of law exclusions, and its rejection of the public policy argument. The Appellate Court determined that the trial court improperly had concluded that the business pursuits exclusion of the policy did not apply. Therefore, it reversed the trial court's judgment on that basis without reaching the other issues raised by the plaintiffs. *Nationwide Mutual Ins. Co.* v. *Pasiak*, supra, 161 Conn. App. 89. The defendant's certified appeal to this court followed. See *Nationwide Mutual Ins. Co.* v. *Pasiak*, 320 Conn. 913, 130 A.3d 266 (2016).

## II

### INSURANCE POLICY AND ITS CONSTRUCTION

We begin with the relevant policy provisions and the principles of construction that guide our review of those provisions.

### A

The defendant's personal umbrella policy obligated the plaintiffs to pay for damages an insured is legally obligated to pay due to an "occurrence" in excess of certain sums. This term and others of significance are defined in the policy as follows:

"Occurrence(s) means an accident including continuous or repeated exposure to the same general conditions. It must result in bodily injury, property damage, or personal injury caused by an insured. . . .

"Bodily injury means bodily harm, including resulting sickness, disease, or death. Bodily injury *does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any other similar injury unless the direct result of bodily harm.* . . .

"*Personal injury means*:

"[a] false arrest, *false imprisonment*, wrongful conviction, wrongful entry . . . ." (Emphasis added.)

The policy provides exclusions to this coverage. Those exclusions include:

"An occurrence arising out of the business pursuits . . . of an insured";

"Any insured's obligation, including benefits required to be paid, under any of the following laws . . . workers' compensation"; and

"Bodily injury or personal injury resulting from acts or omissions relating directly or indirectly to sexual molestation, physical or mental abuse, harassment, including sexual harassment, whether actual, alleged or threatened. . . ."

### B

In considering the meaning of these exclusions and their application to the facts, we are guided by settled principles. "[C]onstruction of a contract of insurance presents a question of law for the [trial] court which this court reviews de novo. . . . The determinative question is the intent of the parties, that is, what coverage the [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . In evaluating the expectations of the parties, we are mindful of the principle that provisions in insurance contracts must be construed as laymen would understand [them] and not according to the interpretation of sophisticated underwriters and that the policyholder's expectations should be protected as

long as they are objectively reasonable from the layman's point of view. . . . [W]hen the words of an insurance contract are, without violence, susceptible of two [equally responsible] interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted. . . . [T]his rule of construction favorable to the insured extends to exclusion clauses." (Citations omitted; internal quotation marks omitted.) *Vermont Mutual Ins. Co.* v. *Walukiewicz*, 290 Conn. 582, 591–92, 966 A.2d 672 (2009). When construing exclusion clauses, "the language should be construed in favor of the insured unless it has a high degree of certainty that the policy language clearly and unambiguously excludes the claim." (Internal quotation marks omitted.) *Connecticut Ins. Guaranty Assn.* v. *Drown*, 314 Conn. 161, 188, 101 A.3d 200 (2014). While the insured bears the burden of proving coverage, the insurer bears the burden of proving that an exclusion to coverage applies. See *Capstone Building Corp.* v. *American Motorists Ins. Co.*, 308 Conn. 760, 788 n.24, 67 A.3d 961 (2013).

This court previously has applied these rules of construction to policy definitions similar to those in the present case. In *Imperial Casualty & Indemnity Co.* v. *State*, 246 Conn. 313, 327–29, 714 A.2d 1230 (1998), this court confronted the internal inconsistency between a policy limiting coverage to accidents (i.e., unintentional conduct) while also providing coverage for certain injuries that could result only from intentional conduct, such as false imprisonment. Consistent with our rules of construction, we construed this ambiguity in favor of the insured to provide coverage for the intentional acts specified.[8] See id., 330–31.

Our prior construction of those provisions has particular significance to the present case. As the trial court emphasized in its decision on the second motion for summary judgment regarding indemnification, "the provision within the umbrella policy that includes coverage for false imprisonment is crucial in the determination of whether the policy provides coverage for the plaintiffs' verdict entered in the underlying Socci [action]." The trial court identified the injury of false imprisonment, and no other, as covered under the policy at issue.[9] With that focus in mind, we turn to the certified issue.

### III

### BUSINESS PURSUITS EXCLUSION

The defendant contends that the Appellate Court improperly concluded that the false imprisonment of Socci was "[a]n occurrence arising out of the business pursuits . . . of an insured." As we explain subsequently in this opinion, although we agree with the defendant that the Appellate Court's analysis was flawed, we conclude that the trial court's analysis also was flawed.

The trial court made no separate factual findings with regard to this exclusion. However, its analysis referred to critical testimony in the Socci action regarding certain statements the defendant purportedly made to Socci after Kotulsky left as to reasons why they should not call the police. The defendant purportedly cited his long, close friendship with Kotulsky and the ruinous effect on his business.

The trial court framed its analysis in terms of two related issues. First, it noted that "the real issue is whether the actions of [the defendant] in response to the robbery arose out of the business pursuits for the Pasiak Construction business *or* [arose] as the defendant contends because he was trying to protect a lifelong friend." (Emphasis added.) Second, it considered whether the defendant's actions evidenced the continuity and profit motive necessary under the business pursuits test. The court rejected the plaintiffs' reliance on Socci's testimony indicating that the defendant had claimed (at the time of the incident) that the incident would ruin his business, reasoning that this argument ignored the testimony reflecting Kotulsky's friendship with the defendant, and the lack of proof of any impact on the defendant's business had the robbery succeeded.

The Appellate Court determined that the trial court's analysis reflected a misapplication of the business pursuits exclusion. *Nationwide Mutual Ins. Co.* v. *Pasiak*, supra, 161 Conn. App. 89, 100–101. The Appellate Court concluded that the defendant's operation of his construction company, and his employment of Socci in support thereof, constituted the requisite "business pursuits," and that Socci's injuries arose out of that business pursuit. Id., 99. As to the latter conclusion, the court reasoned that "the sine qua non of the defendant's tortious conduct was . . . Socci's presence at his business office fulfilling her responsibilities as his employee. . . . Stated alternatively, had . . . Socci not been at the office performing her duties as an employee of the defendant's business, there is no reason to believe that she would have been assaulted by Kotulsky and, consequently, detained by the defendant. Indeed, there was no other reason for . . . Socci's presence on the premises, and her acquiescence in obeying the defendant's commands to wait and not leave were, in part, a function of their employer-employee relationship." Id., 99–100. The Appellate Court deemed the defendant's subjective motivations for his actions irrelevant. Id., 101.

On appeal to this court, the defendant contends that the Appellate Court's analysis improperly focused on the sequence of events rather than the mechanism of the injury. He also contends that the Appellate Court improperly found facts insofar as it concluded that Socci's acquiescence in obeying the defendant's commands was a function of their employer-employee rela-

tionship. He claims that the trial court properly focused on whether his actions met the continuity and profit motive test for a business pursuit articulated by this court. We conclude that the analysis in both of the lower courts' decisions was a misapplication of the business pursuits exclusion, and that the case should be remanded to the trial court to allow it to reconsider the evidence, adduced after further proceedings, under the proper standard.

Although the policy defines the term "business" as "a trade, profession, occupation, or employment including self-employment," it does not define "business pursuits" or "arising out of." The meaning of both terms, however, has been articulated by this court as well as other jurisdictions considering this exclusion.

This court adopted a definition of "business pursuits" in *Pacific Indemnity Insurance Co.* v. *Aetna Casualty & Surety Co.*, 240 Conn. 26, 30, 688 A.2d 319 (1997), that conformed to the meaning ascribed in most other jurisdictions: "[T]he term business pursuits encompasse[s] two elements, continuity and profit motive. As to the first, there must be a customary engagement or a stated occupation; as to the latter, there must be shown to be such activity as a means of livelihood; gainful employment; means of earning a living; procuring subsistence or profit; commercial transactions or engagements." (Internal quotation marks omitted.) This test casts a broader net to include activities other than those that bear the formal or legal hallmarks of an established business or a full-time occupation. See, e.g., id., 27–28 (boarding horses by persons otherwise employed full-time was business pursuit). "The determination of whether a particular activity constitutes a business pursuit is to be made by a flexible fact-specific inquiry." Id., 33.

In the present case, no one questions that the activities of the defendant's construction company meet the two elements of a business pursuit. Nor does anyone contend that false imprisonment constitutes a business pursuit. Therefore, the question is not whether the false imprisonment itself satisfied the continuity/profit elements of a business pursuit, as the trial court's rationale suggested, but rather whether the defendant's false imprisonment of Socci "arose out of" his business pursuits in operating the construction company. See *Neal* v. *Celina Mutual Ins. Co.*, 522 S.W.2d 179, 180–81 (Ky. 1975) ("[o]f course accidents of any kind are not business pursuits in themselves; the exclusion clause plainly has reference to accidents that occur in the carrying on of a business pursuit"); *Greenman* v. *Michigan Mutual Ins. Co.*, 173 Mich. App. 88, 94, 433 N.W.2d 346 (1988) ("[t]he complained of acts themselves need not be performed for profit; the acts need only be performed during the business pursuit of the insured"); 46 C.J.S. 226, Insurance § 1353 (2007) ("[w]hen the questioned con-

duct is incidental to the insured's regular employment, profit motive is irrelevant to a business pursuits determination"); see also *Cambridge Mutual Fire Ins. Co.* v. *Sakon*, 132 Conn. App. 370, 378, 31 A.3d 849 (2011) (conducting separate inquiries as to whether actions alleged in counterclaim for which indemnification was sought were business pursuits and whether actions arose from insured's business pursuit of commercial development plan), cert. denied, 304 Conn. 904, 38 A.3d 1202 (2012). Therefore, the present case turns on the meaning of "arising out of" the defendant's business pursuits.

The meaning of "arising out of" in the context of insurance policies was already well established when this court first defined business pursuits. In *Hogle* v. *Hogle*, 167 Conn. 572, 577, 356 A.2d 172 (1975), this court explained that "it is sufficient to show only that the accident or injury 'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to' the [specified subject] in order to meet the requirement that there be a causal relationship between the accident or injury and the [subject]." See also *Misiti, LLC* v. *Travelers Property Casualty Co. of America*, 308 Conn. 146, 158, 61 A.3d 485 (2013) (recognizing that definition in *Hogle* applies outside of motor vehicle context). This court has described the definition in *Hogle* as "expansive," underscoring that it is less demanding than the standard for proximate cause. *New London County Mutual Ins. Co.* v. *Nantes*, 303 Conn. 737, 759, 36 A.3d 224 (2012); accord *Board of Education* v. *St. Paul Fire & Marine Ins. Co.*, 261 Conn. 37, 48, 801 A.2d 752 (2002); see also *Fibreboard Corp.* v. *Hartford Accident & Indemnity Co.*, 16 Cal. App. 4th 492, 504, 20 Cal. Rptr. 2d 376 (1993) (citing same definition and noting that " '[a]rising out of' are words of much broader significance than 'caused by' "); *Metropolitan Property & Casualty Ins. Co.* v. *Fitchburg Mutual Ins. Co.*, 58 Mass. App. 818, 820–21, 793 N.E.2d 1252 (2003) ("[t]he terms 'arising out of' and 'in connection with' are not be to be construed narrowly but are read expansively in insurance contracts"); *United States Fire Ins. Co.* v. *New York Marine & General Ins. Co.*, 268 App. Div. 2d 19, 21–22, 706 N.Y.S.2d 377 (2000) ("when used in automobile exclusion clauses, the words arising out of the . . . use are deemed to be broad, general, comprehensive terms, ordinarily understood to mean originating from, incident to, or having connection with the use of the vehicle" [internal quotation marks omitted]).

Although *Hogle* involved a provision affording coverage, its expansive definition also has been applied when the phrase was used in coverage exclusions; see, e.g., *New London County Mutual Ins. Co.* v. *Nantes*, supra, 303 Conn. 753–54; including the business pursuits exclusion. See *Cambridge Mutual Fire Ins. Co.* v. *Sakon*, supra, 132 Conn. App. 380. Numerous other jurisdictions apply the same definition to the business pursuits

exclusion. See, e.g., *Metropolitan Property & Casualty Ins. Co.* v. *Fitchburg Mutual Ins. Co.*, supra, 58 Mass. App. 821; *Blomdahl* v. *Peters*, Docket No. 2014AP2696, 2016 WL 413174, *2 (Wis. App. February 4, 2016). But see *Farm Bureau Life Ins. Co.* v. *Holmes Murphy & Associates, Inc.*, 831 N.W.2d 129, 134 n.7 (Iowa 2013) ("a phrase like 'arising out of' may be given a narrower scope in an exclusion when a court finds the exclusion ambiguous and therefore determines the phrase means 'proximately caused by' "); *South Carolina Farm Bureau Mutual Ins. Co.* v. *S.E.C.U.R.E. Underwriters Risk Retention Group*, 347 S.C. 333, 339–40, 554 S.E.2d 870 (App. 2001) (concluding that narrower construction of arising out of applied to business pursuits exclusion under rule of construction specific to exclusions), rev'd on other grounds, 353 S.C. 249, 578 S.E.2d 8 (2003).

Our case law indicates that the question of whether the defendant's false imprisonment of Socci was connected with, had its origins in, grew out of, flowed from, or was incident to his business pursuits would also be a factual matter. See *Kolomiets* v. *Syncor International Corp.*, 252 Conn. 261, 265, 746 A.2d 743 (2000) (considering whether injury arose out of employment in workers' compensation claim as matter of fact); *Whitney Frocks, Inc.* v. *Jobrack*, 135 Conn. 529, 534, 66 A.2d 607 (1949) ("the question whether or not the transaction arose out of the business for which the corporation was organized was a question of fact for the jury to decide"). But see *Northern Security Ins. Co.* v. *Rosenthal*, 186 Vt. 578, 579, 980 A.2d 805 (2009) ("[t]he court's determination that there was no coverage presents a mixed question of fact and law: [1] a factual determination concerning the nature of the conduct giving rise to the liability; and [2] a legal conclusion as to whether the conduct falls within the business-pursuits exclusion").

Our case law construing the phrase "arising out of" offers useful, but limited, guidance. Although broadly construed, this court's application of this phrase indicates that the requisite causal nexus would not be met merely by a sequential relationship between the injury and the business pursuit. Compare *Misiti, LLC* v. *Travelers Property Casualty Co. of America*, supra, 308 Conn. 162–63 n.11 (causal nexus to establish liability arising out of use of part of premises leased to tavern not established simply because use of tavern and injury occurred in sequence; injury occurred after patron left tavern, took detour from walkway to parking lot to scenic area, and was injured on part of premises not leased to tavern), with *Board of Education* v. *St. Paul Fire & Marine Ins. Co.*, supra, 261 Conn. 45, 47–48 (causal nexus to establish liability resulting from use of covered vehicle established when bus driver negligently allowed special education student to depart from bus unsupervised and student thereafter was sexually assaulted in school bathroom when driver's negligence was direct factor in causing injury). Accordingly, this

case law makes clear that the mere fact that the false imprisonment occurred after Socci arrived at her workplace would not, in and of itself, establish the requisite nexus.

Given the paucity of Connecticut case law applying this exclusion, it is useful to consider other courts' applications of this common exclusion, albeit with a critical eye in light of other textual differences.[10] See annot., 35 A.L.R.5th 375 (1996) (noting that business pursuits exclusions may be found in "practically all homeowners' policies," "nearly all of the provisions employ virtually the same language," "provisions . . . include broad exclusionary language for liabilities 'arising out of business pursuits of an insured' ").

Although the workplace as the locus of the injury is always a significant factor, as one early commentator noted: "There seems almost unanimous accord in the decisions that the location at which an act is performed is not decisive on the question of whether the act constitutes part of an excluded business pursuit. Rather, it is the nature of the particular act involved and its relationship, or lack of relationship, to the business that controls." L. Frazier, "The 'Business Pursuits' Exclusion in Personal Liability Insurance Policies: What the Courts Have Done with It," 1970 Ins. L.J. 519, 533–34 (1970). The requisite connection is obvious in cases in which the act giving rise to liability occurred in the usual course of employment or the acts were incidental to those occurring in the usual course of employment. See, e.g., *Metropolitan Property & Casualty Ins. Co.* v. *Fitchburg Mutual Ins. Co.*, supra, 58 Mass. App. 821 (focusing on fact that act injuring coworker at workplace, although not itself related to employment, occurred while coworker was working, and injury would not have occurred but for fact that insured tortfeasor had been performing task for her employer just before injury occurred); *Berkshire Mutual Ins. Co.* v. *LaChance*, 115 N.H. 487, 489, 343 A.2d 642 (1975) (accident injuring coworker at workplace arose out of business pursuit when it occurred while insured was engaged in his regular occupation).

Because "arising out of" is an expansive phrase, however, the causal connection to the business pursuit extends beyond such obvious examples. For example, the purpose of the activity or action giving rise to the liability, in connection with other employment related facts, may support the requisite causal nexus. Altercations causing bodily injury and even death have been deemed to arise from a business pursuit when the dispute giving rise to the action was business related. *Liberty Mutual Ins. Co.* v. *Miller*, 549 So. 2d 1200, 1200–1201 (Fla. App. 1989) (exclusion applied to confrontation between physicians at hospital, regarding care and treatment of mutual patient, that resulted in personal injury); *Otero* v. *United States Fire Ins. Co.*,

314 So. 2d 208, 209 (Fla. App. 1975) (exclusion applied to assault of tenant by insured landlord's son-in-law when assault arose in course of dispute regarding insured's return of security deposit and tenant's return of key), cert. denied, 328 So. 2d 843, 844 (Fla. 1976); *Reliance Ins. Co.* v. *Fisher*, 164 Mont. 278, 280, 284–85, 521 P.2d 193 (1974) (exclusion applied when teacher struck another teacher over disciplining of student during school hours*)*; *U. S. F. & G. Ins. Co.* v. *Brannan*, 22 Wn. App. 341, 342, 350, 589 P.2d 817 (1979) (killing of one business associate and wounding of another fell within exclusion when altercation arose over business matter and took place on business site during business hours); see also *Kermans* v. *Pendleton*, 62 Mich. App. 576, 579, 233 N.W.2d 658 (1975) (exclusion applied when insured owner of bar shot patron because owner "was engaged in his business pursuit at the time of the shooting and . . . but for this business pursuit, the shooting would not have occurred"; shooting incident was related to physical safety of bar and its patrons); *Luneau* v. *Peerless Ins. Co.*, 170 Vt. 442, 443, 446, 750 A.2d 1031 (2000) (exclusion applied when insured, engaged as disc jockey at wedding, knocked over negligently stacked speakers when he got into fight with one wedding guest about song insured had forgotten to play, injuring another wedding guest). Although courts often have placed emphasis on the fact that the incident occurred at a work site during normal business hours; see 9A S. Plitt et al., Couch on Insurance (3d Ed. Rev. 2015) § 128.19, p. 128-58 ("liabilities in connection with workplace altercations have been held to necessarily involve the insured's business pursuits and therefore fall within the business pursuits exclusion"); the absence of such facts has not precluded application of the exclusion as a matter of law when an employment relationship existed and related to the basis of the dispute. See, e.g., *Smith* v. *Sears, Roebuck & Co.*, 191 W. Va. 563, 566, 447 S.E.2d 255 (1994) (material question of fact as to whether business pursuits exclusion applied because, although initial disagreement between coworkers was related to business, conflict occurred after they left workplace).

In other circumstances in which the business nexus of the activity itself is not clear, the purpose of the activity may be a decisive factor. Compare *South Carolina Farm Bureau Mutual Ins. Co.* v. *S.E.C.U.R.E. Underwriters Risk Retention Group*, supra, 347 S.C. 339–40 (exclusion did not apply to dog owner's liability for dog bite sustained by minor at office because dog was family pet; it was not kept for security purposes, as mascot or any function associated with business), with *Safeco Ins. Co.* v. *Leslie*, 276 Or. 221, 224, 554 P.2d 469 (1976) (exclusion applied to injury from accidental discharge of gun kept by service station employee when he brought gun to work to protect large amounts of cash that accumulated at station on Friday nights). In

addition, injuries sustained in social gatherings initiated by the employer may be deemed to arise out of a business pursuit if the purpose of the gathering related to the business, i.e., improving employee relationships or workplace morale. See *West American Ins. Co.* v. *California Mutual Ins. Co.*, 195 Cal. App. 3d 314, 323–24, 240 Cal. Rptr. 540 (1987). The mere fact that a dual social and business purpose exists will not, in and of itself, take the activity outside the scope of the exclusion.[11] See id., 324; see also *New London County Mutual Ins. Co.* v. *Nantes*, supra, 303 Conn. 756–58.

In addition, even when no business purpose reasonably could motivate or be furthered by the action, use of the employment relationship or status to effectuate the harmful act may provide the requisite causal connection. Thus, sexual assaults have been deemed to arise out of a business pursuit when the employer or employee used his or her position of authority or trust attendant to that position to perpetrate the acts. See, e.g., *Armed Forces Ins. Exchange* v. *Transamerica Ins. Co.*, 88 Haw. 373, 381, 386, 966 P.2d 1099 (App. 1998) (sexual assaults by public housing inspector against residents arose from business pursuit because inspector gained entry to residents' homes purportedly to conduct inspections, which was function performed as part of employment), cert. denied sub nom. *Armed Forces Ins. Exchange* v. *Sagawa*, Hawaii Supreme Court, Docket No. 21183 (October 26, 1998); *Rubin* v. *United Services Automobile Assn.*, Docket No. 04-P-1629, 2006 WL 1543972, *1–2 (Mass. App. June 6, 2006) (dentist's sexual harassment of employee at office and at YMCA arose out of business pursuit; latter "was related to, linked to, or associated with her employment" because dentist paid employee for her time during both periods [internal quotation marks omitted]); *Greenman* v. *Michigan Mutual Ins. Co.*, supra, 173 Mich. App. 90, 94 (employer's sexual harassment of employee occurred at law firm where both worked; additional support for finding that act arose from business pursuit is that claim could not legally exist but for employer-employee relationship); *Frankenmuth Mutual Ins. Co.* v. *Kompus*, 135 Mich. App. 667, 677, 354 N.W.2d 303 (1984) (insured therapist "was able to commit the complained-of acts [against patients] apparently only because of the trust imposed in him as doctor by his patients"), appeal denied, Supreme Court of Michigan, Docket Nos. 74742, 74743 (February 28, 1985); *Zimmerman* v. *Safeco Ins. Co. of America*, 605 N.W.2d 727, 731 (Minn. 2000) ("[B]ecause the sexual harassment for which [the insured] was found liable can only happen in the workplace—for example, the creation of a hostile work environment—by definition it falls within the 'business pursuits' exclusion. . . . [T]he liability-creating conduct is based upon the employment relationship in the business setting."). But see *Scheer* v. *State Farm Fire & Casualty Co.*, 708 So.

2d 312, 313 (Fla. App.) (where court did not distinguish between two policies at issue, respectively including "caused by" and "arising out of" business pursuits, exclusions did not bar duty to defend physician alleged to have touched employees' breasts and buttocks because acts did not arise out of his profession and conduct was not primarily undertaken in furtherance of business interest), review denied, 719 So. 2d 893 (Fla. 1998); *Miller* v. *McClure*, 326 N.J. Super. 558, 570, 742 A.2d 564 (App. Div. 1998) (deeming exclusion applicable to hostile workplace environment sexual harassment claims but deeming it inapplicable to any claims not legally dependent on employment relationship), aff'd, 162 N.J. 575, 745 A.2d 1162 (1999). A supporting factor cited in harassment cases in which the exclusion applied was that the conduct directly impacted the employee's employment. See, e.g., *Greenman* v. *Michigan Mutual Ins. Co.*, supra, 94 (claim of employer's sexual harassment could not have existed outside employer-employee relationship); *Zimmerman* v. *Safeco Ins. Co. of America*, supra, 731 (sexual harassment led to employee's constructive discharge, occurrence that could not take place outside business environment).

In light of this case law, it is clear that neither the trial court nor the Appellate Court applied the proper standard for "arising out of" a business pursuit. The trial court's continuity and profit motive test conflated the test for determining whether a business pursuit exists with the one for determining whether the act giving rise to the injury arose out of such a pursuit. It appears to have compounded that misstep in two ways. First, the court focused on Kotulsky's actions as they may have related to the actual profitability of the defendant's business, rather than considering the defendant's purported statements to, and actions toward, Socci as they may have related to his business and/or the employment relationship.[12] Second, the court's analysis indicated that an act could satisfy the exclusion only if it was exclusively in furtherance of the business pursuit; consequently, any personal motive for that act would negate application of the exclusion. However, equating "arising out of" with exclusively "in furtherance of" would render the former clearly more restrictive than the descriptive terms used in *Hogle*. Indeed, such an interpretation would render most tortious conduct (even accidental) outside the scope of the business pursuits exclusion, as such conduct rarely actually furthers a business purpose. Moreover, an employer's misuse of the employer-employee relationship to accomplish an end, whether partially or wholly motivated by personal reasons, could satisfy the expansive definition in *Hogle* of "arising out of."[13]

While the trial court's approach was too restrictive, the Appellate Court's was too expansive. The Appellate Court's "but for" approach relied too heavily on Socci's

employment status and the work based location at which she sustained the injury. We agree with the Appellate Court that the requisite standard could be met if, in addition to these facts, the false imprisonment was a function of, or facilitated by, the employer-employee relationship. See *Nationwide Mutual Ins. Co.* v. *Pasiak*, supra, 161 Conn. App. 100. However, this is a factual finding on which the trial court expressed no view.

Indeed, we cannot say on the basis of the limited facts found by the trial court or the evidentiary record whether the business pursuits exclusion applies as a matter of law. There was additional evidence in the Socci action relating to the matter raised by the Appellate Court on which the trial court made no findings, which that court may consider on remand. See footnote 12 of this opinion. We express no view as to whether the court must credit this evidence or the weight that such evidence should be given if the court elects to credit it.

IV

ALTERNATIVE GROUNDS FOR AFFIRMANCE

Because our conclusion entitles the plaintiffs only to reconsideration of whether the business pursuits exclusion bars indemnification, not judgment in their favor, we consider the plaintiffs' alternative grounds for affirming in whole or in part the Appellate Court's judgment directing the trial court to enter such a judgment. We disagree that any of these grounds requires a directed judgment.

A

Workers' Compensation Exclusion

The plaintiffs contend that indemnification is precluded under the umbrella policy's exclusion for "[a]ny insured's obligation, including benefits required to be paid under . . . workers' compensation . . . [or] any similar law." They contend that the trial court improperly equated this issue with the question of whether the defendant had injured Socci in furtherance of his business pursuit, when the proper focus should have been on whether the Workers' Compensation Act; General Statutes § 31-275 et seq.; applied to Socci. The plaintiffs claim that the act applied because (1) it was uncontroverted that Socci was an employee of the construction company and was injured at work, and (2) Socci did not fall under an exclusion to employees covered under the act, as the defendant contended. See General Statutes § 31-275 (9) (B) (" 'Employee' shall not be construed to include . . . (iv) [a]ny person engaged in any type of service in or about a private dwelling provided he is not regularly employed by the owner or occupier over twenty-six hours per week"). Even if we accept both of these contentions, the plaintiffs have failed to prove that this exclusion applies.

The plaintiffs assume that this exclusion is satisfied if the insured *would have been obligated* under the act to pay workers' compensation benefits *had a claim for such benefits been made.*[14] They have not established, however, that any such obligation exists in the present case. By their own admission, the construction company was Socci's employer, a fact evidenced by the paychecks issued to Socci by the construction company that were admitted into evidence at the declaratory judgment trial. See General Statutes § 31-275 (10) (defining employer to include limited liability corporation). As such, the defendant, the insured, presumably would not personally incur any obligation to pay a compensable workers' compensation claim had Socci timely filed a notice of claim. Even if the defendant could be deemed legally obligated for the workers' compensation obligations of the construction company, an argument the plaintiffs have not made; cf. *Patel* v. *Flexo Converters U.S.A.*, *Inc.*, 309 Conn. 52, 58, 68 A.3d 1162 (2013) (discussing when high ranking person may be deemed alter ego of corporation); the plaintiffs have proffered no authority to establish that Socci's injuries would have been compensable under the act. In order for Socci's emotional distress injuries to have been compensable, they would have had to have been caused by physical injury or occupational disease. See General Statutes § 31-275 (16) (B) (ii). The trial court found to the contrary. See footnote 9 of this opinion.

B

Abuse Exclusion

The plaintiffs also claim that indemnification is barred under the umbrella policy exclusion for "personal injury resulting from acts or omissions relating directly or indirectly to . . . physical or mental abuse . . . ." They contend that the defendant's conduct and its effect on Socci satisfied the common meaning of mental abuse, pointing to the construction of abuse under a similar policy exclusion in *Safeco Ins. Co. of America* v. *Vecsey*, Docket No. 3:08cv833 (JBA), 2010 WL 3925126, *9–10 (D. Conn. September 30, 2010), on which several other courts have relied. Although the trial court found that the defendant had not abused Socci and distinguished *Vecsey* on its facts, the plaintiffs claim that this finding was contrary to the evidence and the award of punitive damages, and that factual differences between the cases miss the mark. We conclude that the abuse exclusion does not apply as a matter of policy construction, an additional ground cited in the trial court's decision denying the plaintiffs' second motion for summary judgment as to this exclusion.

In *Vecsey*, the policy covered an accident that resulted in bodily injury, but excluded bodily injury "arising out of physical or mental abuse . . . ." Id.,

*2. The United States District Court for the District of Connecticut assumed that a permanent eye injury sustained by the insured's wife when her eye had been struck by a carrot thrown by the insured, after he had yelled and cursed at her, was a covered occurrence, but concluded that it fell under the abuse exclusion. Id., *3–4, *7. After consulting dictionaries, the court concluded that abuse means the improper use or maltreatment of another "that deviates from a baseline societal understanding of what is appropriate conduct," that the act need not be motivated by a subjective expectation that bodily injury will occur, and that there need not be a pattern of conduct. Id., *9–11.

Although a literal application of these definitions would seem to encompass almost every wrongful act, we observe that *Vecsey* and the other cases cited by the plaintiffs in which the requisite abuse was found involved threatening, harassing, screaming, and/or verbally or physically intimidating conduct. See, e.g., *Barstow* v. *Shea*, 196 F. Supp. 2d 141, 150 (D. Conn. 2002); *Havsy* v. *Washington State Dept. Health Board of Osteopathic Medicine & Surgery*, Docket No. 53198-1-I, 2004 WL 2153876, *16–17 (Wn. App. September 27, 2004), review denied, 154 Wn. 2d 1009, 113 P.3d 481 (2005). Nonetheless, even assuming that the District Court properly construed "abuse" in *Vecsey*, we disagree that this exclusion applies in the present case.

There is a significant difference between the policy in *Vecsey* and the one in the present case. Here, the covered occurrence is not simply an unspecified accident causing an unspecified injury (i.e., bodily injury) but a specific intentional act—false imprisonment—expressly covered by the policy. Applying the District Court's definition of abuse to the policy in the present case would render the promise of coverage for false imprisonment largely illusory, as almost every such tort would involve some form of physical or mental "abuse" as defined in *Vecsey*.[15] See *Safeco Ins. Co. of America* v. *Vecsey*, supra, 2010 WL 3925126, *9–11. Even assuming it is technically possible to commit false imprisonment without inflicting physical or mental maltreatment, we are not persuaded that a layperson would understand the coverage to be so limited. See *Northrop* v. *Allstate Ins. Co.*, 247 Conn. 242, 251, 720 A.2d 879 (1998) (declining to interpret policy to yield result that would render coverage "largely illusory"); *Hansen* v. *Ohio Casualty Ins. Co.*, 239 Conn. 537, 544, 687 A.2d 1262 (1996) ("[i]n general, courts will protect the reasonable expectations of applicants, insureds, and intended beneficiaries regarding the coverage afforded by insurance contracts" [internal quotation marks omitted]).

Conversely, when the maltreatment undertaken to commit false imprisonment is of such independent consequence to distinguish it from that inherent in the

intentional tort, a layperson reasonably would understand that the abuse exclusion would bar coverage. Cf. *Auto-Owners Ins. Co.* v. *Todd*, 547 N.W.2d 696, 699–700 (Minn. 1996) (concluding that intentional acts exclusion barred coverage for claim of false imprisonment, even though false imprisonment was covered occurrence, because that action was simply means by which insured accomplished intentional plan to commit sexual assault). Acts of such independent consequence, however, plainly were not implicated in the present case.

C

Public Policy

The plaintiffs next contend that the Appellate Court's judgment should be affirmed in part as to their obligation to indemnify the defendant for punitive damages. They contend that, in the absence of an express grant of coverage for punitive damages, it would violate public policy to construe a policy to indemnify a wrongdoer for punitive damages. As support, they cite *Bodner* v. *United Services Automobile Assn.*, 222 Conn. 480, 497–98, 610 A.2d 1212 (1992), wherein this court stated that "a tortfeasor may not protect himself from liability by seeking indemnity from his insurer for damages, punitive in nature, that we imposed on him for his own intentional or reckless wrongdoing." We are not persuaded that *Bodner* controls the present case.

*Bodner* was a case focusing on policy considerations specific to uninsured motorist coverage.[16] See *Caulfield* v. *Amica Mutual Ins. Co.*, 31 Conn. App. 781, 786, 627 A.2d 466 ("[n]otwithstanding policy language that would permit coverage of common law [punitive] damages, the *Bodner* court concluded that public policy considerations precluded such coverage *in the context of uninsured motorist coverage*" [emphasis added]), cert. denied, 227 Conn. 913, 632 A.2d 688 (1993). Such coverage serves a different function than coverage under a personal liability policy: "The public policy established by the uninsured motorist statute is that every insured is entitled to recover for the damages he or she would have been able to recover if the uninsured motorist had maintained a policy of liability insurance. . . . [A]llowing a recovery of punitive damages under uninsured motorist coverage would, in effect, place the insured in a better position than would exist if the tortfeasor had been insured. . . . Further . . . [the insurer here] has no relationship . . . to the tortfeasor . . . and cannot allocate even a portion of the risk of punitive damages to the tortfeasor by increasing the tortfeasor's insurance rates." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Bodner* v. *United Services Automobile Assn.*, supra, 222 Conn. 499. None of those concerns is implicated in the present case.

In addition, *Bodner* did not involve, as does the pre-

sent case, a policy expressly providing coverage for an intentional act, namely, false imprisonment. A leading treatise argues that to refuse to enforce a contract covering punitive damages for intentional acts under such circumstances would allow insurers to avoid an obligation for which they bargained, and to be enriched unjustly: "[I]n those various contracts where the company insures against liability for false arrest, false imprisonment, malicious prosecution, libel, slander, and invasion of privacy, [punitive] damages—under current judicial practices—almost necessarily will follow. It is not seemly for insurance companies to collect premiums for risks which they voluntarily undertake, and for which they actively advertise in competition with other companies, and then when a loss arises to say 'It is against public policy for us to pay this award.' " 12 J. Appleman, Insurance Law and Practice (1981) § 7031, p. 155; accord *St. Paul Mercury Ins. Co.* v. *Duke University*, 849 F.2d 133, 136 (4th Cir. 1988) (applying this majority position); *Fluke Corp.* v. *Hartford Accident & Indemnity Co.*, 102 Wn. App. 237, 242–43, 246–48, 7 P.3d 825 (2000) (concluding that public policy did not bar coverage for punitive damages when policy covered intentional tort of malicious prosecution and did not expressly exclude punitive damages), aff'd, 145 Wn. 2d 137, 34 P.3d 809 (2001).

Notably, the plaintiffs do not contend that it would violate public policy to indemnify the defendant for compensatory damages awarded for the same intentional conduct. Common-law punitive damages under our law, which, unlike most jurisdictions, are limited to litigation costs, also help to make the injured plaintiff whole. See *Bodner* v. *United Services Automobile Assn.*, supra, 222 Conn. 492; see also *Bifolck* v. *Philip Morris, Inc.*, 324 Conn. 402, 455, 152 A.3d 1183 (2016) (our common-law measure of punitive damages is "indisputably one of the most conservative in the nation" [internal quotation marks omitted]). Accordingly, in the absence of a public policy reflected in our laws against providing such coverage, we conclude that, under the facts of the present case, the plaintiffs are bound to keep the bargain they struck, which includes coverage for common-law punitive damages for false imprisonment.

V

SCOPE OF DISCOVERY AND TRIAL

Finally, we turn to the plaintiffs' claim that the trial court improperly deprived them of a full and independent hearing on all of the issues relevant to coverage of the defendant's liability. Specifically, they contend that the trial court improperly determined that they were bound by the general verdict in the Socci action and limited to the evidence adduced in that case because, in the trial court's view, the plaintiffs had an opportunity in that action (1) to intervene to submit

interrogatories to ascertain the basis of the jury's verdict, and (2) to develop a factual record relating to the policy exclusions. The plaintiffs make the related claims that, as a result of these improper determinations, the trial court improperly denied them the opportunity to develop their coverage defenses in discovery and at trial and then improperly construed evidentiary gaps against them. The plaintiffs acknowledge that the trial court did not preclude all discovery, but contend that the belated and limited basis on which discovery was permitted was too little, too late.

We observe that the record is not a model of clarity or consistency regarding either the plaintiffs' claims or the trial court's rulings relating to them. However, our conclusions in the preceding sections of this opinion make it unnecessary to resolve some of the thornier questions raised by the plaintiffs,[17] as well as the defendant's responsive procedural arguments. We have concluded that, with the possible exception of the business pursuits exclusion, none of the exclusions raised on appeal negates the plaintiffs' duty to indemnify the defendant for liability incurred as a result of Socci's false imprisonment, an act that both parties agree the evidence and verdict support. Our conclusions rest solely on legal grounds, not on deficiencies in the evidence. The business pursuits exclusion remains the only policy exclusion on which a factual basis could exist to negate the plaintiffs' indemnification obligation. Accordingly, the sole issue remaining is the proper procedure on remand on this issue. We conclude that the plaintiffs are entitled to litigate the business pursuits issue without being limited to the evidentiary record in the Socci action.

We begin with the question of what coverage matters may be litigated by an insurer following judgment against its insured, and then turn to the question of what evidence may be used to adjudicate such matters. The general rule regarding the effect of a judgment against an insured on an insurer who has an independent duty to defend its insured is set forth in the Restatement (Second) of Judgments. It provides: "(1) When an indemnitor has an obligation to indemnify an indemnitee (such as an insured) against liability to third persons and also to provide the indemnitee with a defense of actions involving claims that might be within the scope of the indemnity obligation, and an action is brought against the indemnitee involving such a claim and the indemnitor is given reasonable notice of the action and an opportunity to assume its defense, a judgment for the injured person has the following effects on the indemnitor in a subsequent action by the indemnitee for indemnification:

"(a) The indemnitor is estopped from disputing the existence and extent of the indemnitee's liability to the injured person; and

"(b) The indemnitor is precluded from relitigating *those issues determined in the action against the indemnitee as to which there was no conflict of interest between the indemnitor and the indemnitee.*

"(2) A 'conflict of interest' for purposes of this Section exists when the injured person's claim against the indemnitee is such that it could be sustained on different grounds, one of which is within the indemnitor's obligation to indemnify and another of which is not." (Emphasis added.) 2 Restatement (Second), Judgments § 58 (1982).

A leading treatise further elaborates on the circumstances under which an insurer will not be collaterally estopped from relitigating issues relating to coverage in a subsequent declaratory judgment action. One such circumstance occurs "[w]hen, because of a conflict of interest, the insurer hires an independent counsel, who does not also represent the company's interests, to defend the insured . . . ." (Footnote omitted.) 1 A. Windt, Insurance Claims & Disputes: Representation of Insurance Companies and Insureds (6th Ed. 2013) § 6:22, p. 6-266. Thus, for example, an insurer that had reserved its right to challenge coverage on the basis of the purported intentional nature of the insured's act was not bound by a verdict finding the insured negligent. See *State Farm Fire & Casualty Co.* v. *Mabry*, 255 Va. 286, 288, 497 S.E.2d 844 (1998). The insurer was not a party to the action, and it was not in privity with the insured defendant because its reservation of rights established that its position diverged from that of its insured on this issue. See id., 290; see also *Shelter Mutual Ins. Co.* v. *Vaughn*, 300 P.3d 998, 1001–1003 (Colo. App. 2013). The insurer could not assert its position in conjunction with providing a defense to its insured; doing so would violate its duty to the insured by exposing the insured to the possibility of punitive damages. See *State Farm Fire & Casualty Co.* v. *Mabry*, supra, 291; see also *Metropolitan Life Ins. Co.* v. *Aetna Casualty & Surety Co.*, 249 Conn. 36, 61, 730 A.2d 51 (1999) (defense counsel provided by insurer owes exclusive duty of loyalty to insured).

Significantly, "[c]ollateral estoppel works . . . only with regard to facts necessarily adjudicated in the lawsuit against the insured. Gratuitous statements in judgments, therefore, adjudicating facts that would result in the creation of coverage, but which facts did not truly determine the insured's liability and the amount of the damages should not give rise to collateral estoppel." 1 A. Windt, supra, § 6:22, p. 6-261; accord *Hartford Accident & Indemnity Co.* v. *Villasenor*, 21 Ariz. App. 206, 209, 517 P.2d 1099 (1974) ("The application of this doctrine of collateral estoppel . . . is limited to those facts essential to the judgment of tort liability. An insurer, when sued upon the policy, can present any defenses not inconsistent with the judgment against its

insured."); see also *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 373–74, 727 A.2d 1245 (1999) (Collateral estoppel "precludes a party from relitigating issues and facts actually and necessarily determined in an earlier proceeding between the same parties or those in privity with them upon a different claim. . . . If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action." [Citations omitted.]). Indeed, "[t]he insurer should be afforded an opportunity to raise and have independently adjudicated any issue relating to its own liability as long as the resolution of that issue in its favor will not be inconsistent with the findings already made in the underlying action." 1 A. Windt, supra, § 6:25, pp. 6-279 through 6-280.

Although there are some efficiency arguments favoring litigating coverage issues in the underlying tort action giving rise to that obligation, there are three principal reasons cited as to why facts material only to coverage would not properly be adjudicated in the underlying tort action. First, defense counsel provided by the insurer would violate his or her duty to the insured by proffering evidence intended to prove a lack of coverage. See *Seaco Ins. Co.* v. *Devine Brothers, Inc.*, Docket No. CV-00-0374721, 2003 WL 21958391, *5 (Conn. Super. July 30, 2003) (citing cases); see also 1 A. Windt, supra, § 4:22, p. 4-214 and § 6:27, p. 6-291 (independent counsel hired by insurer should not be asked to comment on coverage issues, let alone be made aware of such issues). Consequently, it has been held that defense counsel hired by an insurer could not request special interrogatories or special verdicts concerning coverage issues because of counsel's exclusive duty to represent the insured. See *Universal Underwriters Ins. Co.* v. *East Central Alabama Ford-Mercury, Inc.*, 574 So. 2d 716, 723 (Ala. 1990). Second, facts pertaining to insurance coverage may have no relevance to the issues of liability and damages that the trier of fact must decide in the underlying action. See *Chenkus* v. *Dickson*, Docket No. 282007, 1990 WL 283216, *1 (Conn. Super. September 7, 1990) (noting that, because case pertains to negligent and intentional assault, it had nothing to do with whether those acts are covered under contract of insurance). A related third reason is that courts must exercise care not to allow evidence that would indicate that the defendant tortfeasor is insured against liability, as the availability of insurance is generally inadmissible due to its potential to prejudice the trier of fact. See Conn. Code Evid. § 4-10 and commentary; *Cromer* v. *Sefton*, 471 N.E.2d 700, 704 (Ind. App. 1984) ("Clearly the policy of the law is to keep the issue of insurance out of personal injury litigation. . . . To permit intervention by the insurer to litigate coverage in the principal tort case against its insured would distract the trier and literally force the

plaintiff to become embroiled in a matter in which she does not yet have an interest.").[18]

Stated broadly then, an insurer may litigate coverage issues previously litigated on which it had a conflict of interest with its insured or coverage issues on which material facts were not litigated and necessary to the underlying judgment. The next question is what evidence may be considered to decide such issues.

When the coverage issue previously was litigated, one treatise argues that the issue should be resolved only by reference to the record in the underlying case. See 1 A. Windt, supra, § 6:26, pp. 6-282 through 6-283; see also *DaCruz* v. *State Farm Fire & Casualty Co.*, 268 Conn. 675, 688, 846 A.2d 849 (2004) ("duty to indemnify depends upon the facts established at trial and the theory under which judgment is actually entered in the case" [internal quotation marks omitted]). But there is a fair body of authority taking the contrary position. See, e.g., *United States Steel Corp.* v. *Hartford Accident & Indemnity Co.*, 511 F.2d 96, 100 (7th Cir. 1975) (Illinois law); *Spears* v. *State Farm Fire & Casualty Ins.*, 291 Ark. 465, 467, 469, 725 S.W.2d 835 (1987); *Bay State Ins. Co.* v. *Wilson*, 108 Ill. App. 3d 1096, 1104–1105, 440 N.E.2d 131 (1982), aff'd, 96 Ill. 2d 487, 451 N.E.2d 880 (1983); *Snodgrass* v. *Baize*, 405 N.E.2d 48, 53–54 (Ind. App. 1980); *Wear* v. *Farmers Ins. Co. of Washington*, 49 Wn. App. 655, 661, 745 P.2d 526 (1987) ("[T]he jury's interrogatories and the verdict in the liability trial are irrelevant to the determination of [the insured's] intent and the existence of coverage under the [the insured's] policy. How, then, is the issue of the insured's intent to be determined? It can only be determined at a hearing at which the trial court takes evidence on the coverage issue. Here, instead of taking testimony at the declaratory judgment action on the issue of intentional action, the parties elected to submit the record from the liability trial to the trial court."); see also *Duke* v. *Hoch*, 468 F.2d 973, 984 (5th Cir. 1972) (Florida law; allowing for additional evidence if coverage issue can not be decided on basis of record in underlying case).

When the issue was not litigated or insufficient factual findings were made to make a determination on the coverage issue, there is consensus that additional evidence properly may be introduced.[19] See 1 A. Windt, supra, § 6:26, pp. 6-281 through 6-282 n.2; see also, e.g., *State Farm Mutual Automobile Ins. Co.* v. *Coughran*, 303 U.S. 485, 486–87, 58 S. Ct. 670, 82 L. Ed. 970 (1938) (insurer proffered evidence on issue to prove that coverage was unavailable for judgment rendered against insured on issue that was not litigated in underlying tort action).

Applying these principles to the present case, it is clear that the plaintiffs are entitled to a de novo trial on the issue of coverage in light of the business pursuits exclusion. There was no privity between the plaintiffs

and the defendant as to that issue because they did not share an interest in proving that the defendant's false imprisonment of Socci arose out of his business pursuits. Indeed, it was in the interest of both the defendant and Socci to minimize or avoid the presentation of facts that could have established a connection between the defendant's interests as the owner of his construction company and the wrongful actions he was alleged to have undertaken. More fundamentally, whether that causal connection existed was neither actually litigated nor necessarily determined. Socci's claims were in no way dependent on proving that the defendant's wrongful acts arose out of his business pursuits. The fact that some evidence relevant to this issue was presented in the Socci action is immaterial.

It also is of no consequence that the plaintiffs did not seek permission to intervene in the Socci action. Even if an unexercised right to intervene could be relevant; but see *Mount Vernon Fire Ins. Co.* v. *Morris*, 90 Conn. App. 525, 538–39, 877 A.2d 910 (2005) (reaching contrary conclusion), appeal dismissed, 281 Conn. 544, 917 A.2d 538 (2007); the plaintiffs had no such right,[20] and it plainly would have been an abuse of discretion to allow permissive intervention to litigate this policy exclusion in the Socci action. Therefore, on remand, the plaintiffs are entitled to appropriate discovery and a trial de novo to determine whether they have met their burden of proving that the business pursuits exclusion bars coverage.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the trial court's judgment with respect to count two of the complaint and to remand the case to the trial court for further proceedings consistent with this opinion.

In this opinion ROGERS, C. J., and PALMER, ROBINSON and D'AURIA, Js. concurred.

* This case was originally argued before a panel of this court consisting of Justices Palmer, Eveleigh, McDonald, Espinosa, and Robinson. Thereafter, Chief Justice Rogers and Justice D'Auria were added to the panel and have read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

The listing of justices reflects their seniority on this court as of the date of oral argument.

[1] The complaint in the declaratory judgment action also named three other defendants: Pasiak Construction Services, LLC, the company owned and operated by Pasiak; and Sara Socci and Kraig Socci, the plaintiffs in the underlying tort action. The claims in the present action arise under a policy issued to Pasiak as the sole policyholder, and the Soccis have not participated in this appeal. Accordingly, we refer to Pasiak throughout this opinion as the defendant and to the remaining defendants by name. Because Kraig Socci's only claim is derivative of Sara Socci's claims, any reference to Socci is to Sara Socci.

[2] The same judge presided over both actions. For a more comprehensive discussion of the facts giving rise to the tort action, see *Socci* v. *Pasiak*, 137 Conn. App. 562, 565–67, 49 A.3d 287, cert. denied, 307 Conn. 919, 54 A.3d 563 (2012).

[3] Although the trial court made no findings regarding this discussion, Socci's testimony indicated that she had heard statements in the exchange between Kotulsky and the defendant indicating that Kotulsky was angry

with the defendant because he believed that the defendant had been intimate with a woman with whom Kotulsky was, or had been, involved.

[4] In the declaratory judgment action, the plaintiffs produced evidence that the defendant also had been arrested in connection with this incident, eventually pleaded nolo contendere to two misdemeanor offenses, and paid a fine of $3015.

[5] The complaint also alleged reckless infliction of emotional distress, but the jury was not charged on that count.

[6] Prior to the filing of the plaintiffs' second motion for summary judgment, the defendant filed a twelve count counterclaim against the plaintiffs, alleging various acts of bad faith, misrepresentation, and breach of contract. The trial court granted a motion to bifurcate the declaratory judgment complaint and the counterclaim. Although the defendant's counterclaim remains pending before the trial court, the decision on the declaratory judgment action was an appealable final judgment because the court's decision disposed of all counts of the plaintiffs' complaint. See Practice Book § 61-2.

[7] "Under the general verdict rule, if a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party. . . . Thus, in a case in which the general verdict rule operates, if any ground for the verdict is proper, the verdict must stand; only if every ground is improper does the verdict fall. . . . A party desiring to avoid the effects of the general verdict rule may elicit the specific grounds for the verdict by submitting interrogatories to the jury." (Citations omitted; internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 371–72, 727 A.2d 1245 (1999).

[8] The defendant suggests that, applying the logic of *Imperial Casualty & Indemnity Co.*, supra, 246 Conn. 329, we should conclude that the business pursuits exclusion in his policy is ambiguous and must be construed in his favor to afford coverage. Specifically, he contends that the policy is ambiguous as to whether that exclusion applies to both intentional and accidental acts. However, the ambiguity identified in *Imperial Casualty & Indemnity Co.* would dictate that the policy coverage extends to both types of acts, not that the exclusion does not apply to either type of act.

[9] Socci's emotional distress (whether negligently or intentionally inflicted) is not an enumerated personal injury. Nor is it a covered bodily injury because bodily injury is defined to exclude emotional distress unless caused by a physical injury, and the trial court found that the evidence established at most the converse—that Socci's emotional distress may have caused or exacerbated existing physical symptoms. Socci's claim of negligence would not give rise to a covered bodily injury for similar reasons. Although in submissions to the court, the defendant occasionally referred to the claim of negligence as a claim for "wrongful detention," which is a type of personal injury specified in the policy, the trial court characterized wrongful detention as an intentional act. The defendant has provided no analysis regarding the meaning of the wrongful detention provision or its relationship to the exclusions at issue.

[10] Cases from other jurisdictions must be critically examined because the business pursuits exclusion is often accompanied by an exception for activities that are ordinarily incident to nonbusiness pursuits. See, e.g., *Hennings* v. *State Farm Fire & Casualty Co.*, 438 N.W.2d 680, 684 (Minn. App. 1989). In the present case, no such exception is included in the defendant's umbrella policy, although a similar exception is included in the business pursuits exclusion in the defendant's homeowners policy.

When such an exception is present, some courts have excluded from coverage only those occurrences that are exclusively in furtherance of the business pursuit or that could not be accomplished outside the employment relationship. See, e.g., *Farmers Ins. Exchange* v. *Sipple*, 255 N.W.2d 373, 375 (Minn. 1977); *New Jersey Property Liability Guaranty Assn.* v. *Brown*, 174 N.J. Super. 629, 633, 417 A.2d 117 (App. Div.), cert. denied, 85 N.J. 462, 427 A.2d 561 (1980); see also *Crane* v. *State Farm Fire & Casualty Co.*, 5 Cal. 3d 112, 118, 485 P.2d 1129, 95 Cal. Rptr. 513 (1971) (when there is dual purpose, nonbusiness pursuit exception to exclusion applies). Other courts have rejected such a broad reading of the exclusion. See, e.g., *Armed Forces Ins. Exchange* v. *Transamerica Ins. Co.*, 88 Haw. 373, 379, 966 P.2d 1099 (App. 1998), cert. denied sub nom. *Armed Forces Ins. Exchange* v. *Sagawa*, Hawaii Supreme Court, Docket No. 21183 (October 26, 1998); *Martinelli* v. *Security Ins. Co. of New Haven*, 490 S.W.2d 427, 432 (Mo. App. 1972) (citing Illinois and Michigan cases).

[11] But see footnote 10 of this opinion, which recognizes that some courts

apply a more stringent approach when the exclusion includes an exception.

[12] Socci's testimony reflects numerous additional facts on which the trial court's decision is silent. For example, Kotulsky was targeting Socci's "boss." Because Socci was a new employee, the defendant periodically stopped by the office to see whether Socci had any questions. After the incident, the defendant anxiously and repeatedly expressed a concern to Socci that Kotulsky's actions would "ruin" his business, and did so as part of a two-pronged argument as to why she should not report the incident to the police. When she told the defendant that she wanted to leave the office, he told her, "It's business as usual." Although Socci was too distraught to perform any of her usual tasks, she viewed her presence in acquiescence to the defendant's demands as having "worked all day." When he and Socci left the office to meet with Taranto to discuss the incident, the defendant directed Socci to leave her personal effects at the office. The defendant stopped at a construction site on the way to the meeting with Taranto and spoke with two workers there. Socci announced to the defendant that she could no longer work for him, and he relayed that concern to Taranto when the three met. Taranto was instrumental in Socci's hiring and training, and she was intimately involved in the defendant's business affairs. Socci and Taranto knew each other from having previously worked for the same employer for several years, but never had any relationship outside of work. The defendant allowed Socci to leave close to the time that her normal workday was scheduled to end.

[13] Under workers' compensation, an injury sustained by an employee when performing a personal errand for his or her employer may be deemed to arise out of and in the course of the employment, often under the logic that the employee usually has no choice in the matter. See, e.g., *Hebert* v. *CIGNA*, 637 So. 2d 1221, 1224–25 (La. App. 1994); *Keene* v. *Insley*, 26 Md. App. 1, 8–10 and nn. 3–6, 337 A.2d 168 (1975) (citing authorities); *Keasey* v. *Mitzel Bros.*, 135 Pa. Super. 460, 463, 5 A.2d 631 (1939); 27 N.Y. Practice Series, Workers' Compensation § 20:9, Lunch Break (2d Ed. Rev. May, 2017).

[14] The plaintiffs' interpretation of this exclusion raises numerous questions, none of which we need answer in the present case in light of their inability to establish that the exclusion as interpreted by them applies.

[15] The defendant suggests that this conflict would be resolved if we were to construe the phrase "mental or physical abuse" to mean abuse of a *sexual* nature. He contends that, because this exclusion refers to "a variety of sexually based behaviors" (i.e., sexual molestation), the entire exclusion should be read to refer only to such behaviors. We decline to adopt this construction, as it is plainly not supported by the text. The clearest evidence is the inclusion of both "harassment" and "sexual harassment" in the exclusion, the former being rendered superfluous under the defendant's construction.

[16] In making the statement upon which the plaintiffs rely, the court in *Bodner* relied on a case that did not involve an uninsured motorist policy, *Tedesco* v. *Maryland Casualty Co.*, 127 Conn. 533, 18 A.2d 357 (1941). However, *Tedesco* also raised materially different policy concerns from those in the present case. It involved the question of indemnification for statutory double damages, which were not intended to compensate the victim in any way, but to punish the wrongdoer for an offense committed against the state and designed to protect the public. Id., 536.

This court also relied on *Tedesco* in dicta in the context of a policy for professional liability insurance when concluding that public policy prohibited indemnification for punitive damages for an intentional tort, in that case a dentist's sexual assault of a patient. See *St. Paul Fire & Marine Ins. Co.* v. *Shernow*, 222 Conn. 823, 824, 832 n.4, 610 A.2d 1281 (1992). Given the serious criminal nature of the act and the professional obligations violated in that case, it too is materially distinguishable from the present case.

[17] The vexing questions include whether a general verdict in an underlying action can serve as a basis for collateral estoppel in a subsequent action to resolve insurance coverage issues, and whether such an effect depends on the insurer having taken some action (through counsel it has provided its insured or through party intervention) to avoid a general verdict. We note that resolution of these questions is complicated by the conflicting substantive and procedural approaches taken in various jurisdictions, as well as by the varied factual permutations that bear on whether the issue is one on which the insured or the insurer bears the burden of proof. See generally 17 L. Russ & T. Segalla, Couch on Insurance (3d Ed. 2005) § 239:42, p. 239-60 (acknowledging that question of whether there has been decision on specific issue as to which preclusion is claimed can be particularly

problematic when there is ambiguous finding or jury verdict); 1 A. Windt, Insurance Claims & Disputes: Representation of Insurance Companies and Insureds (6th Ed. 2013) § 6.27, pp. 6-286 through 6-287 (discussing various rules for allocating jury verdict between covered and noncovered claims depending on burden of proof); see also C. McIlwain, "Clear As Mud: An Insurer's Rights and Duties Where Coverage Under a Liability Policy Is Questionable," 27 Cumb. L. Rev. 31 (1996–1997); F. Ryan & K. Gorak, "Splitting the Baby: The Insurer's Duty To Notify the Insured of the Need for an Allocated Verdict," 24 Mealey's Litigation Report: Insurance Bad Faith No. 15, p. 28 (December 9, 2010).

We also observe that, on appeal, the plaintiffs did not challenge the trial court's legal determination that the policy's intentional acts exclusion does not negate coverage for false imprisonment. Therefore, although they contend that the trial court's ruling improperly prohibited them from litigating the issue of whether the defendant's conduct was intentional, they would not be entitled to relief even if they were allowed to do so. Indeed, as we previously have indicated, the parties are in agreement that the defendant committed an intentional act.

[18] A few jurisdictions have concluded that, in order to appropriately safeguard against these concerns while at the same time ensuring consistency between the underlying case and the insurance coverage case, a request can be made to consolidate the cases and to address the insurance issues in a supplemental or bifurcated proceeding with the same trier of fact that decided the liability issues. See, e.g., *Universal Underwriters Ins. Co.* v. *East Central Alabama Ford-Mercury, Inc.*, supra, 574 So. 2d 723–24. But see C. McIlwain, "Clear As Mud: An Insurer's Rights and Duties Where Coverage Under a Liability Policy Is Questionable," 27 Cumb. L. Rev. 31, 51–52 (1996–1997) (arguing that such procedures often are not made available to insurers as matter of court's discretion). This court has not yet considered such rules or procedures, and we need not do so in the present case given the limited issue on remand.

[19] The defendant concedes that the plaintiffs could have proffered new evidence on the exclusions that were not litigated, but contends that they failed to take the proper steps to identify the information that they sought and the need for such evidence. As to the latter point, we previously have indicated that we need not consider whether the plaintiffs are entitled to a new trial because they were improperly denied the right to proffer new evidence. We have already determined that they are entitled to a new trial and simply provide guidance as to what that procedure should encompass.

[20] It appears to be broadly accepted that a personal liability insurer has no right to intervene in the underlying action because its interest is contingent before judgment has entered against its insured. See, e.g., *Restor-A-Dent Dental Laboratories, Inc.* v. *Certified Alloy Products, Inc.*, 725 F.2d 871, 874–75 (2d Cir. 1984); *Universal Underwriters Ins. Co.* v. *East Central Alabama Ford-Mercury, Inc.*, supra, 574 So. 2d 723; see also *Lodigensky* v. *American States Preferred Ins. Co.*, 898 S.W.2d 661, 664–66 (Mo. App. 1995) (insurer not entitled to intervene as of right in tort action against its insured because duty to provide coverage would only arise, if at all, after adverse judgment has been entered against insured and judgment in personal injury action would not bind insurer on issue of coverage it has reserved).